United States District Court

For The Western District Of Washington

At Tacoma

| | |
|---|---|
| Drew MacEwen, Andrew Barkis, Chris Corry, Brandon Vick, Kelly Chambers, Michael McKee, Fran Wills, Bruce Russell, Phil Fortunato, Dave McMullan, Isaac Vellekamp, and Marcus Torrey, | No. 3:20-cv-05423 |
| *Plaintiffs*, | Declaration of Andrew Barkis |
| v. | |
| Jay Inslee, in his official capacity as the Governor of Washington, | |
| *Defendant.* | |

I, Andrew Barkis, make the following declaration under penalty of perjury:

1. I am a plaintiff in this action and have personal knowledge of the facts stated herein.
2. I am a resident of Thurston County Washington, and elected state representative for the 2nd Legislative District.
3. I am the ranking minority member on the Transportation Committee of the House. I serve as a member of the Community Development & Housing and Veterans Affairs Committee.
4. I am considered a legislative expert on affordable housing issues.
5. I have worked closely with the Washington Multi-Family Housing Association, an industry advocacy group. I am familiar with its position on the impact of Proclamation 20-19.1 on Washington residents.

### Community-Wide Social And Economic Harms

6. Not having the ability to enforce lease violations encourages bad behavior that has a negative impact on residents, property management and maintenance staff.
7. To the extent it prevents property owners from enforcing certain lease violations, the Proclamations protect residents who are creating a disruptive or unsafe living space for others. Imagine a small city that didn't enforce their laws. That is what housing providers are experiencing across the state.
8. 91% of rent collected goes back into the property to pay for the mortgage, property taxes, insurance and maintenance. Property owners who are not receiving rent are still incurring these costs and continue to be required to provide free housing even those who can pay rent.
9. Nationally, multifamily housing providers owe $1.6 trillion in mortgage debt and just 47 percent of this debt is backed by the federal government, leaving 53 percent of properties exempt from the CARES Act protections.
10. The rental housing industry understands the importance of housing stability and the benefits of minimizing displacement during this crisis, yet we believe any limitations on evictions be narrowly tailored to give both renters and housing providers a better chance at surviving these difficult times.
11. Before this current moratorium, multifamily housing providers worked with renters to waive late fees, eliminate rent increases, take advantage of discounts to pay rent early and enter into payment plans to ensure providers can pay the mortgage, taxes, insurance premiums, utilities for common areas, and most importantly, payroll.
12. Currently, paying renters are subsidizing those who are unable to make rent. Apartments in Washington State operate on small margins and substantial losses of rental income for any period of time will result in a reduction of housing quality and services, ultimately imperiling the solvency of the community.
13. The sheer breadth of the proclamations is encouraging abusive reliance on the moratorium by people who have not been directly impacted by COVID-19 and who would otherwise pay rent if not for the proclamations.
14. For example, the lack of any requirements to provide some form of basic notification of the renter being adversely impacted by COVID-19 invites abuse of the provisions dedicated to protecting renters affected by COVID-19.
15. Indeed, certain local elected leaders are, citing the moratorium, flaunting the State's eviction Proclamation and openly refusing to pay their own rent – though they are not directly impacted by COVID-19. Others are asking tenants to do the same.
16. The consequence of the widespread abuse of the Governor's broad proclamations is that vulnerable tenants are now facing extreme danger of housing instability after the pandemic has passed. The Proclamations also increase the likelihood that housing providers will be unable to assist renters who actually need assistance.
17. Apartment owners are also struggling to determine whether apartments are abandoned and potentially available to rent. Every unit counts in Washington, because Washington underproduced 226,000 units between 2000 and 2015.
18. Overall, the proclamations risk destabilizing the rental housing market that more 1,000,000 Washingtonians rely on to maintain a quality and safe home.
19. Beyond the economic costs, providers are struggling to manage otherwise common behavioral and social situations to the detriment of renters and decreasing the availability of rental housing units for those needing a home.
20. For example, housing providers are struggling to enforce basic community rules such as abusive and harassing behavior by renters to renters and apartment staff, excessive and disruptive noise, smoking in non-smoking properties, parking violations that impede the safety of the community, pet issues, property damage and vandalism, unauthorized tenancies, criminal and violent behavior, and direct violations of the Stay Home, Stay Healthy Order.

### Harms To My Business – Hometown Property Management, Inc.

21. I own Hometown Property Management, Inc. ("Hometown").
22. Hometown is a property management company doing business in Washington state.
23. Hometown's ordinary course of business sometimes involves evicting tenants, raising rent, charging late fees, serving compliance notices, and collecting debts.
24. Hometown is now prohibited from evicting tenants as a result of the Proclamations for any reason.
25. Hometown is also now restricted in its ability to raise rents, charge late fees, serve

compliance notices, and collect debts as a result of the Proclamations.

26. But for the Proclamations, Hometown could elect to raise rents, could charge late fees, could serve compliance notices, and collect debts, as it might elect to do in the ordinary course of business.

27. After the pandemic passes, Hometown will also remain restricted in its ability to collect debts incurred during the pandemic, as a result of the Proclamations.

28. But for the Proclamations, Hometown would collect more and larger shares of debts after the pandemic passes.

29. I have suffered a 20% loss on Hometown's net revenue due to the Proclamations.

30. For two and a half months, I have had to furlough almost 20% of Hometown's fulltime staff due to the Proclamations – though I will bring my staff back on June 1 if the Proclamations are lifted.

31. For two and a half months, I have had to change the payroll schedule from salaried to hourly for almost an additional 20% of Hometown's fulltime staff due to the Proclamations.

32. I have had to alter the entire structure of Hometown's core operating procedures due to the Proclamations.

33. I will not be able to recoup a great deal my losses due to the Proclamations because the Proclamation also restricts Hometown's ability to collect debt.

SIGNED, May 25, 2020, at _____Olympia_____, Washington.

By: _____
Andrew Barkis

*MacEwen v. Inslee*
Declaration of Andrew Barkis - 1
No. 3:20-cv-05423

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243