1                                                          The Honorable Benjamin H. Settle

2

3

4

5

6

7                              **UNITED STATES DISTRICT COURT**
                              **WESTERN DISTRICT OF WASHINGTON**
8                                         **AT TACOMA**

9     DREW MACEWEN, *et al.*,                     NO. 3:20-cv-05423-BHS

10                          Plaintiffs,
                                                  DECLARATION OF KEVIN
11    vs.                                         WICKERSHAM

12    GOVERNOR JAY INSLEE, in his
      official capacity as the Governor of
13    Washington,

14                          Defendant.

15

16          I, Kevin Wickersham, declare as follows:

17          1.      I am over the age of 18, competent to testify as to the matters herein, and make

18    this declaration based on my personal knowledge. I am currently employed as the Preparedness

19    and Response Unit Supervisor in the Office of Communicable Disease Epidemiology at the

20    Washington State Department of Health (DOH), a position I have held for 3.5 years. I first started

21    working for DOH in September 2015.

22          2.      I am responsible for supervising the Preparedness and Response Unit in the

23    Office of Communicable Disease Epidemiology which includes the Rapid Heath Information

24    NetwOrk (RHINO) Program, DOH's all-hazards syndromic surveillance program, and the DOH

25    Disaster Epidemiology program. I also lead emergency planning efforts for the Office of

26    Communicable Disease Epidemiology. I hold a Master of Science degree in Healthcare

DECLARATION OF KEVIN                          1           ATTORNEY GENERAL OF WASHINGTON
WICKERSHAM                                                      Complex Litigation Division
NO. 3:20-CV-05423-BHS                                          800 5th Avenue, Suite 2000
                                                               Seattle, WA 98104-3188
                                                               (206) 474-7744

1    Emergency Management from the Boston University School of Medicine and a Bachelor of Arts

2    in Sociology and Psychology from Boston College. I am a graduate of the Federal Emergency

3    Management Agency (FEMA) National Emergency Management Executive Leadership

4    Academy. My career experience includes working as the Emerging Infectious Disease

5    Preparedness Coordinator in the Office of Emergency Preparedness and Response at DOH, and

6    prior to that in various settings as an emergency manager and emergency medical technician

7    (EMT).

8        3.      DOH and the Secretary of Health work closely with local health officers and local

9    boards of health, which are subject to State Board of Health regulations, WAC 246-100-036,

10   WAC 246-101-505–605.

11       4.      In November 2016, DOH and the Secretary of Health published a plan to prepare

12   for and handle pandemics like COVID-19: the Communicable Disease and Pandemic Response

13   Concept      of      Operations      (Concept      of      Operations),      available      at

14   https://mil.wa.gov/asset/5bac128a8fc74. DOH and the Secretary of Health have proceeded

15   according to the Concept of Operations to address the COVID-19 pandemic. Attached as Exhibit

16   A is a true and correct copy of the Concept of Operations.

17       5.      The Concept of Operations provides a framework whereby communicable

18   disease incidents may be categorized into five levels, where "5" is least severe and "1" is most

19   severe, according to a score determined by a matrix of factors. Ex. A. at ESF8-4-10. For

20   communicable disease incidents at levels 5 and 4, local health jurisdictions lead the response;

21   DOH leads the response for communicable disease incidents at levels 3, 2, and 1, in coordination

22   with local health jurisdictions and federal authorities. As a matter of practice, DOH does not

23   formally categorize or classify a disease incident according to those levels, which provide a

24   general framework to guide the agency's response depending on specific factors applicable to

25   each incident. Based on those factors, it is clear to me that the COVID-19 pandemic has

26

DECLARATION OF KEVIN
WICKERSHAM
NO. 3:20-CV-05423-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1  demanded a governmental response commensurate with a level 2 or 1 communicable disease
2  incident.

3      6.      The Concept of Operations provides for pandemic response actions in phases,
4  with distinct actions for local/tribal-level authorities and state-level authorities. State-level
5  authorities are expected to consider and request a Governor's proclamation of emergency while
6  working with local authorities who are also expected to consider and proclaim local states of
7  emergency.

8      7.      The Concept of Operations also provides response considerations for acute viral
9  respiratory infections (AVRI). These considerations include that "[a]lthough there may be
10  isolated pockets, an influenza or AVRI pandemic will likely affect all geographic areas of the
11  state." Ex. A at ESF8-4-55.

12      8.      I understand that questions have arisen in this litigation as to whether Chapter
13  70.26 RCW establishes the procedure for pandemic influenza preparedness and response in
14  Washington or prescribes to regional health authorities the authority to manage the COVID-19
15  emergency.

16      9.      In all my time working on pandemic preparedness at DOH, I had not heard of
17  Chapter 70.26 RCW until I learned of this lawsuit.

18      10.     After conducting some research, I now understand that Chapter 70.26 RCW was
19  originally enacted in 2006 in response to federal efforts to encourage state and local governments
20  to develop plans for pandemic influenza preparedness. Federal legislation and regulations
21  provided for federal-state cooperative agreements, along with federal funds to be awarded to
22  qualifying states. The focus of Chapter 70.26 RCW appears to be limited to influenza, which is
23  a different category of viruses than that to which SARS-CoV-2 (the virus which causes the
24  coronavirus disease known as COVID-19) belongs, and which has important clinical and
25  epidemiological differences (including the high rate of minor and asymptomatic illnesses for
26  SARS-CoV-2 infections, the absence of any known effective medical countermeasure against

DECLARATION OF KEVIN
WICKERSHAM
NO. 3:20-CV-05423-BHS

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    SARS-CoV-2 infections, such as a prophylactic antiviral or vaccine, and the absence of clear
2    evidence regarding potential long-term sequelae associated with SARS-CoV-2 infection) that
3    have bearing on the response.

4        11.    Chapter 70.26 RCW required local health jurisdictions to develop local pandemic
5    influenza response plans and submit them to DOH for approval or rejection by November 1,
6    2006. In return, DOH was to grant additional funding, including potential federal funding, to
7    local health jurisdictions whose plans DOH found in compliance with the requirements. DOH,
8    in turn, developed statewide pandemic influenza response plans for submission to federal
9    authorities.

10       12.    The State of Washington received federal funds for pandemic influenza
11   preparedness planning in 2006, and submitted its pandemic influenza response plans in
12   coordination with federal authorities in 2008. Since then, the plans developed by local health
13   jurisdictions in response to Chapter 70.26 RCW have receded in importance as DOH and local
14   health jurisdictions have worked to update and strengthen their pandemic preparedness plans
15   (based on more recent communicable disease incidents and advancements in public health
16   science and technology), and as statewide pandemic preparedness efforts have broadened their
17   focus beyond influenza.

18       13.    In the Pandemic and All-Hazards Reauthorization Act of 2013 (PAHPRA),
19   Congress provided standards and benchmarks for all-hazards and pandemic planning, including
20   certain specifications for pandemic influenza plans. DOH's current Concept of Operations,
21   which I discuss above, was developed partly in response to the requirements specified in
22   PAHPRA.

23       14.    PAHPRA, in turn, was amended by the Pandemic and All-Hazards Preparedness
24   and Advancing Innovation Act of 2019 (PAHPAIA), which authorizes new public health and
25   medical preparedness programs for regional health care preparedness and military and civilian
26   partnerships, among other items. DOH is continuing to update and strengthen its pandemic

DECLARATION OF KEVIN                          4                    ATTORNEY GENERAL OF WASHINGTON
WICKERSHAM                                                               Complex Litigation Division
NO. 3:20-CV-05423-BHS                                                    800 5th Avenue, Suite 2000
                                                                         Seattle, WA 98104-3188
                                                                              (206) 474-7744

1  preparedness plans in conjunction with changing federal laws and regulations; as a matter of

2  general practice, DOH regularly reviews and updates its emergency pandemic response plans.

3      15.    As a practical matter, since 2015, in my work at DOH and with local health

4  jurisdictions in preparing for pandemics, neither DOH nor any local health jurisdiction has to

5  my knowledge relied on any plans developed by local health jurisdictions in response to Chapter

6  70.26 RCW.

7      I declare under penalty of perjury under the laws of the State of Washington that the

8  foregoing is true and correct.

9      SIGNED this 12th day of June 2020, at _____ Lacey _____, Washington.

10

11

12                              Kevin Wickersham
                                Preparedness and Response Unit Supervisor
13                              Office of Communicable Disease Epidemiology
                                Washington State Department of Health

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF KEVIN                    5            ATTORNEY GENERAL OF WASHINGTON
WICKERSHAM                                                Complex Litigation Division
NO.  3:20-CV-05423-BHS                                    800 5th Avenue, Suite 2000
                                                         Seattle, WA 98104-3188
                                                         (206) 474-7744

# Exhibit A

# I.   INTRODUCTION

## A.  Background

Despite the advancement of medical and public health sciences, communicable diseases, particularly new emerging and reemerging diseases, remain a threat to public health worldwide. Six categories explain the emergence or re-emergence of communicable diseases. These categories include: human demographics and behavior; technology and industry; economic development and land use; international commerce; microbial adaptation; and breakdown of public health measures. This, combined with modern global travel, has produced an environment in which diseases emerge and quickly spread with no regard for international or continental borders. Careful attention on the part of the public health and healthcare systems constitutes one the most effective lines of defense for the people of Washington against the threat of communicable disease.

Washington's international border with Canada, shared borders with neighboring states, major international seaports, and airports present considerable opportunity for the introduction of communicable diseases to the state. Occasionally, spread of disease is rapid enough, or the impacts of an outbreak are severe enough, to create a situation requiring a greater degree of public health response and intervention. Any large outbreak of a communicable disease, whether it occurs primarily as a natural event (e.g., *E. coli* O157:H7, MERS-CoV, pandemic influenza, etc.), a result of an intentional act (e.g., anthrax mailings, intentional contamination of food or water sources, etc.), or a natural disaster, may result in significant morbidity and mortality.

Effective and well-coordinated response by the public health, healthcare, and other key response partners will limit the impacts of communicable disease, maximize resource availability, and save lives.

This document is driven in part by the requirements expressed within the Pandemic and All-Hazards Preparedness Reauthorization Act of 2013 (PAHPRA) (Public Law 113-5). This document strengthens ". . . the ability of States, local communities, and tribal communities to prepare for, respond to, and be resilient in the event of public health emergencies, whether naturally occurring, unintentional, or deliberate by optimizing alignment and integration of medical and public health preparedness and response planning and capabilities with and into routine daily activities; and promoting familiarity with local medical and public health systems" (H.R. 307-3 (8)(A-B)).

## B.  Mission

The public health and healthcare system in Washington State consists of numerous entities. During an incident of public health significance all system partners must work together in order to meet the health and medical needs of the people of Washington State. In response to communicable disease outbreaks, the unified mission of all public health agencies, healthcare organizations, and other assisting and cooperating entities is to limit morbidity and mortality due to the disease. All agencies must combine their strengths and capabilities in a complimentary manner to maximize success in protecting the lives and safety of the people of Washington.

### C.  Purpose

The purpose of this Concept of Operations is to establish and communicate the respective roles and responsibilities of each major public health and healthcare partner in Washington State during each phase of response to a communicable disease incident of public health significance.

The objectives of this Concept of Operations are to:

1. Provide common terminology and framework for public health and healthcare system preparedness and response to communicable disease.
2. Support decision-making processes of local, state, tribal, and private sector officials to carry out effective response to communicable disease outbreaks.
3. Communicate roles and responsibilities of all agencies with major involvement in response to communicable disease outbreaks.
4. Provide unified support for development of plans and integration of response at the local, regional, state, tribal, and federal levels.
5. Provide framework for multi-agency coordination during a communicable disease emergency or pandemic.

### D.  Scope

This Concept of Operations is applicable during any communicable disease incident of public health significance, including a single case, cluster of cases, or widespread outbreak (epidemic or pandemic) of a known or novel disease that could result in illness, death, disability, other adverse health effects, and/or significant public concern. The scope of this plan is not limited by the nature of any particular communicable disease.

This Concept of Operations is also applicable when emergence or reemergence of a communicable disease and/or increased public concern regarding a communicable disease threat prompts extraordinary preparedness and coordination efforts, even in the absence of disease cases in Washington State or in the United States. The Ebola Virus Disease (EVD) epidemic of 2014 and to a lesser extent, the 2016 Zika Virus pandemic, are examples of such situations.

This Concept of Operations is intended to provide a framework for all agencies involved in response to communicable disease in Washington State, and applies to all such agencies. It is intended to inform but not supersede existing plans maintained by governmental agencies, public health jurisdictions, healthcare entities, Healthcare Coalitions (HCCs), and other response partners. This document is intended to provide a unifying framework under which all partner agencies develop and execute their own plans, protocols, policies, and procedures for response to communicable disease in a well-coordinated manner.

Portions of this Concept of Operations remain active during steady state operations (i.e. in absence of an emergency), in the absence of a communicable disease incident of public health significance or other emergency condition. Full implementation of this Concept of Operations should be considered when one or more of the following occurs:

1. An emergency is declared/proclaimed in any political subdivision of Washington State due to a communicable disease threat.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 9 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

2. Any local or tribal public health partner, state or federal agency, healthcare entity, or HCC requests assistance in response to a communicable disease threat that overwhelms or threatens to overwhelm the capability of that organization.
3. Any state agency recognizes the need for statewide coordination in order to effectively respond to a real or anticipated communicable disease threat.
4. When, in the judgment of the State Communicable Disease Epidemiologist, State Health Officer, Secretary of Health, or other assigned individual having statewide authority, there is the need for enhanced coordination of resources to prepare for or respond to a potential or actual threat to public health posed by a communicable disease.
5. The Secretary of Health or Department of Health (DOH) Chief of Emergency Preparedness and Response anticipates an emerging risk to Washington's public health and medical system that has the potential to overwhelm local capabilities and requires state support to prepare and/or respond effectively.

Specific tactical operations of local health jurisdictions (LHJ), tribal governments, healthcare entities, other state agencies, and all other partner agencies and entities are outside the scope of this plan and understood to be documented in various emergency response plans and protocol documents maintained by each entity.


## E. Planning Assumptions

The following assumptions are made in the development and implementation of this framework:

1. Preservation of life safety including the prevention of further transmission, as well as prevention of morbidity and mortality is the primary mission objective for all involved agencies during any emergency.
2. Supporting health equity and making provisions for people with access and functional needs are critical.
3. The Secretary of Health may direct the statewide public health and medical response as necessary and is authorized by state law to protect the health of the public (RCW 43.70.130 and 43.70.020(3)).
4. The Department of Health (DOH) is the lead agency for responding to multijurisdictional public health and medical emergencies in Washington.
5. During a communicable disease incident, epidemiological surveillance and investigation activities are prioritized to understand the nature and scope of the incident and to protect the public by preventing the spread of the disease.
6. Public health and medical services, resources, facilities, and personnel may be limited in availability or capacity during and following a communicable disease incident.
7. Intrastate and interstate mutual aid, as well as federal agency resources, may be needed to effectively respond to a communicable disease incident.
8. All responding agencies and organizations will follow their existing emergency operations plans and procedures in response to a communicable disease emergency.
9. Communicable disease incidents may require exercising legal authorities to control the spread of the disease. In certain circumstances, individual liberties and freedoms may be compromised in order to protect public health. In a case where individual liberties may be compromised, the authority having jurisdiction will carefully weigh the scientific evidence and public health benefit of such a

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 10 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

measure against the liberties of the individual and will only implement such a measure when it is necessary to control the spread of the disease.

10. Healthcare facilities may have to surge beyond normal capacity to meet the needs of the population during a communicable disease incident.

11. Options other than hospital care may be needed in order to meet the medical needs of the public during a widespread communicable disease incident.

12. Empirical data to guide public health and medical response to a communicable disease may be limited. In such circumstances it is assumed that authorities and medical providers will carry out evidence-based interventions when possible, and when impossible, will use their expertise and professional judgment to act in the best interest of the public.

13. Public perception of the severity of the threat may not be consistent with the true nature of the threat. For this reason, inclusive and effective coordination of information sharing and public information during a communicable disease incident is essential.

14. Two-way information sharing among all partners and all levels of government involved in communicable disease response is critical to the effectiveness of the response.

15. Capabilities may vary significantly from one agency or jurisdiction to another. It is important to remain aware of varying capability levels to anticipate challenges and resource needs in advance.

## F.  Guiding Principles

Development and implementation of this Concept of Operations is rooted in the following principles:

1. <u>Ethics</u> – All actions taken in response to a communicable disease incident must be undertaken with the primary motivation of protecting the health, wellbeing, and interests of the Whole Community of Washington.

2. <u>Responder Safety</u> – The safety of public health and healthcare system personnel must be paramount in order to prevent the erosion of capability should such personnel become impacted by the incident. All agencies are expected to take all reasonable measures to protect the safety and wellbeing of their response personnel.

3. <u>Unity</u> – In order to maximize the ability of each agency to carry out its mission of preventing morbidity and mortality due to the incident, all agencies must respond in a well-coordinated manner under the framework described in this document.

4. <u>Openness</u> – Information sharing is critical during any emergency response, but is particularly important in response to a communicable disease incident. All involved agencies must openly share information to the greatest extent possible.

5. <u>Evidence-Based Practice</u> – Evidence-based practice in the public health and healthcare systems in response to communicable disease is essential. Whenever possible, entities involved in response to a communicable disease incident should seek to gather data to guide their actions and contribute to the body of knowledge to inform future practice.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 11 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

## G. Relevant Laws and Authorities

*For relevant excerpts of these state and federal laws and regulations, please see Attachment I.*

RCW 43.70.020(3) – State Department of Health

RCW 43.70.130 – Powers and duties of the Secretary of Health

RCW 70.05.070 – Local health officer – powers and duties

RCW 70.05.060 – Powers and duties of local board of health

RCW 49.60.218 – Use of dog guide or service animal

RCW 71A.10.040 – Protection from discrimination

WAC 246-100-021 – Responsibilities and duties – Health care providers

WAC 246-100-036 – Responsibilities and duties – Local health officers

WAC 246-100-070 – Enforcement of local health officer orders

WAC 246-101-101 – Notifiable conditions and the healthcare provider

WAC 246-101-105 – Duties of the healthcare provider

WAC 246-101-401 – Notifiable conditions and the responsibilities and duties of others

WAC 246-101-505 – Duties of the local health officer or the local health department

WAC 246-101-605 – Duties of the local health officer or the local health department

42 U.S.C. § 247d–3a - Improving State and local public health security

42 U.S.C. § 264 - Regulations to control communicable diseases

28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services

H.R. 307 – Pandemic and All-Hazards Preparedness Reauthorization Act of 2013 (PAHPRA)

The purpose of the Pandemic and All-Hazards Preparedness Act (PAHPRA) is "to improve the Nation's public health and medical preparedness and response capabilities for emergencies, whether deliberate, accidental, or natural." PAHPRA is also intended "to reauthorize certain programs under the Public Health Service Act and the Federal Food, Drug, and Cosmetic Act with respect to public health security and all-hazards preparedness."

The Pandemic and All-Hazards Preparedness Act of 2006 (PAHPA) and PAHPRA in 2013 amended the Public Health Service Act (Title 42 USC). Amendments include authorizing funding for public health and medical preparedness programs. PAHPRA also provides standards and benchmarks for all-hazards and pandemic planning, including specifications for pandemic influenza plans. This Concept of Operations is intended to address the standards expressed in PAHPRA and meet the benchmarks specified therein.

## II.  CONCEPT OF OPERATIONS

### A. Ongoing and Routine Actions

Most communicable disease incidents are managed through normal operations of healthcare facilities, local health jurisdictions (LHJs), the Department of Health (DOH), and other public health and healthcare system partners. This section describes the roles and responsibilities for detecting, reporting, investigating, and containing the spread of communicable disease.

Routine Detection and Reporting of Communicable Disease

*Healthcare System*

- Public Safety Answering Points (PSAPs) should conduct routine screening for communicable disease during emergency calls. This includes assessing for history of potential exposure to communicable disease, which may include international travel, particularly to areas with endemic or active transmission of communicable disease(s) of public health concern. Call takers should identify patients with recent travel history combined with concerning signs or symptoms and communicate this to first responders if possible
- First responders including Emergency Medical Services (EMS) personnel, fire department personnel, and law enforcement officers should identify patients with history of potential exposure to communicable disease, which may include international travel, as well as concerning signs or symptoms. First responders will communicate this to other responders as well as receiving healthcare facilities.
- Healthcare providers and healthcare facilities are expected to conduct routine screening for communicable disease including assessment of patients for history of domestic and international travel to areas with endemic or active transmission of communicable disease(s) of public health concern. Healthcare providers will identify patients with recent travel history combined with concerning signs or symptoms.
- Healthcare providers, healthcare facilities, and laboratories are required to provide notification to the LHJ or DOH for certain notifiable conditions (http://www.doh.wa.gov/ForPublicHealthandHealthcareProviders/NotifiableConditions/ListofNotifiableConditions) including rare diseases of public health significance and any emerging condition with outbreak potential. This facilitates epidemiological investigation of the source and possible contacts, enables identification of other potential cases and prevention of further transmission, and may help to detect a potential bioterror incident.

*Veterinarians*

- Veterinarians must report the presence of any notifiable conditions to the LHJ and must provide notification of animal cases of certain diseases to the Washington State Department of Agriculture (WSDA). WSDA will communicate with DOH regarding reports of suspected cases of communicable disease of public significance in animals.

*Public Health*

- Per Washington State Administrative Code (WAC) 246-101, LHJs must report specific notifiable conditions to DOH within the timeframes listed in the WAC.

- In cases where the healthcare facility is located in a jurisdiction different from the patient's residence, the LHJ in both the county/state of patient residence as well as the county where the healthcare facility is located will be notified.
- If the patient may have been exposed to the pathogen in another jurisdiction, that LHJ will also be notified. If the exposure may have occurred in another state, the public health jurisdiction in that state will be notified.
- DOH is required to report the presence of some specific notifiable conditions to the United States Centers for Disease Control and Prevention (CDC).
- Washington State utilizes the Rapid Health Information Network (RHINO) to gather data on a variety of communicable and non-communicable conditions in a public health effort to detect outbreaks or clusters of illness prior to widespread impacts within the community.
- Per WAC 246-440-100 and Revised Code of Washington (RCW) 43.70.056, reports of specific Healthcare Associated Infections (HAI) are routinely monitored by DOH to assess the impact of HAI on the healthcare system, and to provide public health guidance to mitigate spread of communicable disease within healthcare facilities across the state.

*Healthcare Coalitions*

- The role of Healthcare Coalitions (HCC) in routine detection and reporting of communicable diseases varies among the regions. HCCs are valuable partners for public health and the healthcare system in sharing situational awareness, facilitating readiness activities, communicating among partner entities, and obtaining needed resources and guidance.

*Tribal Nations*

- Tribal nations, tribal healthcare facilities, and tribal healthcare providers in Washington State are not required to report communicable disease to DOH, but often do so voluntarily. Tribal nations may also provide notification to the CDC for communicable disease when requested or required.

*Diagnostic Laboratories*

- Under WAC 246-101-201, laboratories must notify the LHJ and/or DOH of positive preliminary test results and positive final test results for specific diseases listed in that section. Local Health Officers (LHOs) may require notifications for additional conditions within their jurisdiction.

*Schools*

- Under WAC 246-101-420, Schools are required to notify the LHJ of cases, suspected cases, outbreaks, or suspected outbreaks of disease that may be associated with the school.
- Schools must also cooperate with the LHJ in the monitoring of influenza and in the investigation of cases, suspected cases, outbreaks, or suspected outbreaks of disease that may be associated with the school.
- Schools must consult with a healthcare provider or the LHJ for information about the control and prevention of communicable disease as necessary.

Routine Investigation of Communicable Disease

Once a suspected or confirmed case of communicable disease of public health significance has been detected and reported to the appropriate authority, actions are taken to investigate the source of disease and to identify individuals or groups who may have been exposed.

- Healthcare providers care for and treat the patient, and obtain relevant information to inform the investigation. This information is provided to the LHJ where the healthcare facility is located, except in certain cases where investigation is conducted by DOH.
- The LHJ (or DOH, in certain cases) may also interview the patient and his or her family members for information relevant to the investigation. The LHJ has primary responsibility for conducting epidemiological investigation, and is responsible for notifying other LHJs for the county or counties where the case or case contacts reside.
- For cases of communicable disease occurring on tribal lands, the tribal government has authority and responsibility for conducting epidemiological investigation according to the laws, rules, and regulations of the tribal nation.
- DOH provides assistance, support, and coordination for epidemiological investigations undertaken by LHJs and tribal governments. DOH has primary authority for coordinating the investigation among the affected LHJs and tribal governments when more than one public health jurisdiction is affected.

Routine Control of Communicable Diseases

Communicable diseases are addressed by the healthcare and public health systems on a day-to-day basis. Disease control measures vary based on the nature of the disease and the exposure risk for each contact. Roles and responsibilities for controlling communicable disease in the absence of an emergency are listed here.

*Healthcare System*

- First responder agencies including EMS agencies, fire departments, and law enforcement agencies are responsible for training and equipping their personnel to implement appropriate infection control measures to prevent the spread of communicable disease. First responder agencies maintain the capability to identify personnel who may have been exposed to communicable disease, monitor these personnel, and provide appropriate post-exposure instructions and care for these personnel.
- First responders including EMS personnel, fire department personnel, and law enforcement officers are expected to identify the need for and implement the appropriate infection control measures. This includes the use of the appropriate level of personal protective equipment (PPE) and appropriate decontamination of vehicles and durable medical equipment.
- Healthcare facilities are responsible for training and equipping their personnel to implement appropriate infection control measures to prevent the spread of communicable disease within the facility. Healthcare facilities are also responsible for providing safe infrastructure including appropriately equipped negative-pressure rooms and other appropriate facilities and equipment to control the spread of disease. Healthcare facilities also maintain the capability to identify personnel who may have been exposed to communicable disease, to monitor these personnel, and to provide appropriate post-exposure instructions and care.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 15 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

- Healthcare providers are responsible for identifying the need for and implementing isolation in the environment of care. This includes the use of the appropriate level of PPE and appropriate decontamination of durable medical equipment.

*Local Health Jurisdictions and Local Health Officers*

- The LHO has the authority to control communicable disease within the county. Pursuant to WAC 246-100-036, the LHO is authorized to carry out such "measures he or she deems necessary based on his or her professional judgment, current standards of practice and the best available medical and scientific information" to control communicable disease.
- LHO orders "must be enforced by all police officers, sheriffs, constables, and all other officers and employees of any political subdivisions within the jurisdiction of the health department in accordance with RCW 43.20.050"
- In counties where no LHO has been appointed, the local board of health (LBH) exercises the authority of the LHO.

*Tribal Nations*

- Tribal governments have the authority and responsibility to control communicable disease on tribal lands and are expected to do so according to the laws, rules, and regulations of the tribal government.

*State Agencies*

- DOH and other state agencies routinely provide technical assistance and support to effectively inform the public and assist other jurisdictions in controlling communicable disease.
- The Washington Department of Social and Health Services (DSHS) routinely monitors and controls communicable disease in refugee populations within Washington State. DSHS also manages disease detection and control efforts at state-operated psychiatric facilities including Eastern State Hospital and Western State Hospital.
- WSDA routinely controls communicable disease in animal populations and in federally-licensed food processing facilities in Washington.

*Federal Agencies*

- CDC Division of Global Migration and Quarantine (DGMQ) routinely controls communicable disease at ports of entry.

## B.  Levels of Communicable Disease Incident

When certain conditions exist, it is necessary to shift from the routine actions identified above to an enhanced mode of coordination. The need for this shift to occur is based primarily on the geographical distribution of the incident within or across jurisdictional boundaries. A shift in operations is also necessary if resources are or may be overwhelmed, if the pathogen poses or may pose an extreme threat to public health, if special technical assistance is required, or if public or political perception of the threat is significantly inconsistent with the true severity of the threat.

The levels of communicable disease incident are listed in Table 1 (below) alongside potential characteristics of the incident and the nature of response that occurs at each level. This table applies only to communicable diseases of public health significance.

Refer to Attachment A for a Communicable Disease Emergency Severity Assessment Matrix, a tool for quantitative and qualitative analysis of an ongoing incident to assist in identifying the level of communicable disease incident and appropriate nature of response.

These levels of severity are cross-sectional, in that severity is estimated at one point in time. It is important to, through the course of a communicable disease incident, continuously reevaluate the complexity and severity of the incident to guide response activities.

**Table 1. Nature of Response at Each Level of Communicable Disease Incident**

| Level | Incident Characteristics | Nature of Response |
|---|---|---|
| 5 | The disease is limited in impact and available treatments generally produce positive outcomes in those who are ill. Cases and contacts are limited to a single county or tribal jurisdiction. Disease does not spread very easily and if treatment is needed, nearly any medical facility is capable of treating the disease. | Affected LHJ or tribal government leads the response to the incident |
| 4 | The disease is minor but may be easily transmissible. The disease is well understood and treatment is widely available. The incident affects or occurs across more than one county or tribal jurisdiction. | Affected LHJs or tribal governments lead the response and receive support and coordination from DOH |
| 3 | The disease is moderately severe and threatens to produce significant morbidity or mortality in some populations. Cases and contacts are present in several jurisdictions. Most healthcare providers can safely treat suspected or confirmed cases. Public concern is significant but consistent with the severity of the threat. | DOH leads the response in coordination with affected LHJs and tribal governments |
| 2 | The disease is severe and has limited or no specific treatment options. The disease is highly infectious and requires special training and equipment to manage safely. Public concern is significant and may not be consistent with the severity of the threat. . | DOH leads the statewide response, coordinating with all LHJs and tribal governments in collaboration with the CDC |
| 1 | The disease is novel with severe morbidity and mortality in the general population and has severe or catastrophic effects on social function. Response requires the full efforts and resources of all government agencies at the local, state, and federal levels. | DOH leads the statewide response in close partnership with the CDC, which leads the national response. DOH leads coordination with all disciplines and levels of government |

## C. Communicable Disease Emergencies

Though communicable disease incidents have varying nature and scope there are three primary factors that, when one or more is present, trigger response to communicable disease as an emergency. These factors are:

- The incident affects more than one jurisdiction (county/tribe),
- The incident might overwhelm the resources of any facility or jurisdiction,
- Response to the incident requires cross-jurisdictional coordination beyond the scope of normal operations.

When one or more of these factors is present in Washington State, a communicable disease emergency exists. It is important to note that it is possible for a communicable disease emergency to exist in Washington State even when there are zero cases of the disease within the state.

### D.  Phases of a Communicable Disease Emergency and Expected Response Actions

The phases of a communicable disease emergency, listed below along with expected response actions during each phase, is based on the CDC's preparedness and response framework for influenza pandemics.

The levels of severity discussed above in Table 1 are distinct from the phases of a communicable disease emergency. Incident severity is what determines the response framework. The phases indicated in Figure 1 are chronological rather than cross-sectional and are designed to guide response activities at the levels of local and state government during each phase, regardless of incident severity.

It is important to note that the below tables of expected response actions may not be applicable to all jurisdictions and all communicable disease emergencies. Furthermore, many communicable disease incidents or emergencies will skip certain phases. Helper text is included at the top of each table to provide assistance in identifying the current phase of a CD incident/emergency. This tool is designed to provide a list of considerations for local/tribal and state jurisdictions for the purposes of planning, preparedness, and response.

**Figure 1 – Phases of Communicable Disease Emergency (CDC)**



Investigation Phase

The investigation phase begins when an emerging communicable disease threat is identified that *may* constitute a hazard to the people of Washington. During this phase, the threat is not imminent and the exact nature of the threat may be unclear. Data regarding the threat may be limited in availability and guidance may be limited or nonexistent.

**Table 2 – Investigation Phase – Expected Response Actions**

| Domain | Local/Tribal Level | State Level |
|---|---|---|
| **Incident management and operational coordination** | • Review (and enhance if needed) local/tribal response plans to ensure readiness<br>• Utilize the Communicable Disease Emergency Severity Assessment Matrix to assess severity of the incident (Attachment A)<br>• Coordinate activities and share information with partner entities within the jurisdiction and in neighboring jurisdictions<br>• Develop "triggers" for escalation of incident management efforts and Incident Command System (ICS) activation<br>• Review statutory authorities and legal framework for disease control and emergency response | • Prepare to provide technical and resource assistance to the affected jurisdiction(s) if requested<br>• Utilize the Communicable Disease Emergency Severity Assessment Matrix to assess risk and potential impact of the incident<br>• Assess the need for state-facilitated coordination efforts and prepare to meet this need<br>• Develop "triggers" for escalation of incident management efforts and Incident Management Team (IMT) activation.<br>• Inform state agency leadership and the governor's office if needed<br>• Review statutory authorities and legal framework for control of communicable disease |
| **Surveillance and epidemiology** | • Maintain and enhance active and passive surveillance systems<br>• Implement case and contact investigation of suspected or confirmed infections in humans (and animals if applicable)<br>• Work to identify risk factors for and modes of transmission<br>• Report suspected and confirmed cases as requested<br>• If only animal cases are identified, assess human exposures and risks for infection<br>• Identify whether state assistance is required to support surveillance systems and field investigation | • Maintain and enhance active and passive surveillance systems<br>• Work to identify risk factors for and modes of transmission<br>• Facilitate information sharing and provide guidance as needed<br>• Coordinate activities with animal health officials<br>• Report cases to the CDC as needed<br>• Seek and distribute updated guidance and technical assistance as available<br>• Provide resource assistance to partner entities as requested<br>• Participate in national conversations to share information |
| **Laboratory** | • Work with healthcare providers and entities to facilitate appropriate sample collection and shipping<br>• Coordinate with the State Public Health Laboratory (WAPHL) to support sample accessioning and communication of results as needed<br>• For jurisdictions/entities with laboratory capability, assess and optimize laboratory capacity to detect and characterize cases. Report results as requested | • Assess and optimize laboratory capacity to detect cases<br>• For diseases where testing is not available at the WAPHL, assess feasibility of developing testing capability<br>• Coordinate activities with diagnostic laboratories (if appropriate)<br>• If needed, ship samples to the CDC or other reference labs, receive results, and communicate results to appropriate stakeholders<br>• Identify whether federal assistance is required to support laboratory activities |

| | | |
|---|---|---|
| **Non-Pharmaceutical Interventions (NPIs)** | • Implement appropriate Indirect Non-Pharmaceutical Interventions (see Attachment C) to limit spread of the disease should it occur within the jurisdiction<br>• If human-to-human transmission is suspected, consider implementing Direct Non-Pharmaceutical Interventions (see Attachment C) for suspected and confirmed cases and case contacts (if appropriate)<br>• Enhance all usual emergency preparedness and public health activities with schools and businesses | • Promote Indirect Non-Pharmaceutical Interventions throughout the state. Coordinate messaging with LHJs and Tribal Governments<br>• Review relevant guidance documents and update as needed for the situation<br>• Provide guidance for border health and travelers' health activities as appropriate for the situation |
| **Medical care and countermeasures** | • Engage Healthcare Coalitions to support and coordinate healthcare system preparation<br>• Advise healthcare providers within the jurisdiction to promptly identify suspected cases, diagnose confirmed cases, and promptly provide appropriate treatment to ill persons<br>• Based on current recommendations, implement infection-control practices<br>• If human-to-human transmission is suspected, monitor and assist with early access to post-exposure chemoprophylaxis for case contacts per current recommendations (if applicable)<br>• Review all guidance documents, update as needed for the situation, and communicate with key stakeholders<br>• Enhance all usual emergency preparedness and public health activities with healthcare facilities and providers | • Advise healthcare providers statewide to promptly identify suspected cases, diagnose confirmed cases, and promptly provide appropriate treatment to ill persons<br>• Review all guidance documents and update as needed for the situation. Disseminate guidance for diagnosis and treatment of ill persons and infection-control measures to partner agencies.<br>• Consider which immediate steps are needed to facilitate seamless implementation of medical countermeasures plans<br>• Distribute health advisory notices with information on case definitions and infection-control measures to hospitals and outpatient care centers |
| **Vaccine (if applicable)** | • Identify the quantity of vaccine locally available for distribution if needed. This may be done in collaboration with healthcare coalitions as appropriate<br>• Evaluate all communicable disease preparedness activities, including a review of vaccine distribution plans, identify priority groups for vaccination, and review plans and staffing for mass vaccination clinics and points of dispensing<br>• Review processes for vaccine accountability | • Evaluate all usual communicable disease preparedness activities, including a review and update of vaccine distribution plans, identify priority groups for vaccination, and review plans and staffing for mass vaccination clinics and points of dispensing<br>• Establish the decision framework for initiating a vaccine campaign<br>• Review all guidance documents, update as needed for the situation, and communicate to key stakeholders<br>• Identify the quantity of vaccine available for distribution if needed<br>• Review processes for vaccine accountability |
| **Risk communication** | • Frequently update clinicians (and veterinarians, if appropriate) in the jurisdiction<br>• Share information with key partners, such as animal and human health public affairs officers and other agencies<br>• Disseminate timely, relevant, and inclusive messages to the public | • Disseminate relevant and timely messages in coordination with key partners including local, tribal, state, and federal agencies<br>• Support and coordinate messaging efforts as appropriate with other state, regional, and federal partners<br>• Disseminate timely, relevant, and inclusive messages to the public |

Recognition Phase

The recognition phase begins with the first suspected or confirmed case of the disease located in Washington State. During this phase, the threat is now present within the state and an enhanced mode of response is necessary. The exact nature of the threat may still be somewhat unclear and guidance may continue to be limited.

**Table 3 – Recognition Phase – Expected Response Actions**

| Domain | Local/Tribal Level (includes unaffected jurisdictions) | State Level |
|---|---|---|
| **Incident management and operational coordination** | • Continue or initiate actions described for the investigation phase for all domains<br>• Review all decisions previously made during the investigation phase to ensure they continue to be relevant to the developing situation<br>• Repeat the Communicable Disease Emergency Severity Assessment Matrix to assess risk and potential impact of the incident<br>• Consider activation of the local/tribal emergency operations center<br>• Forecast future resource needs for a potential response or escalation of response | • Continue or initiate actions described for the investigation phase for all domains<br>• Review all decisions previously made during the investigation phase to ensure they continue to be relevant to the developing situation<br>• Repeat the Communicable Disease Emergency Severity Assessment Matrix to assess risk and potential impact of the incident<br>• Forecast future resource needs for a potential response or escalation of response<br>• Convene a group of public health and healthcare system leaders to address policy issues and make statewide policy decisions; expand interagency and intergovernmental coordination<br>• Consider requesting a Governor's emergency proclamation<br>• Consider activation of emergency operations and coordination centers at the state level |
| **Surveillance and epidemiology** | • Conduct enhanced surveillance<br>• Continue case and contact investigation using recommended methods<br>• Enhance surveillance efforts with other local and tribal partners.<br>• Conduct surveillance for hospitalizations and deaths<br>• Report suspected and confirmed cases to DOH<br>• If animal cases are identified, consider conducting joint investigations with animal health officials | • Conduct enhanced surveillance statewide<br>• Gather and distribute critical medical and public health intelligence<br>• Refine criteria for reporting and investigating cases and contacts<br>• Provide technical assistance as needed<br>• Evaluate the need for border controls for animals or products if appropriate, in collaboration with the CDC<br>• Share intelligence with federal agency partners |
| **Laboratory** | • Facilitate confirmation of all suspected cases at an appropriate public health laboratory. Report results to DOH if testing is done at a local laboratory<br>• Facilitate timely notification of results to patients, providers, and public health officials | • Prepare specimen triage plans and implement surge plans if needed<br>• Stockpile diagnostic test kits and ancillary reagents if possible and appropriate<br>• Implement new testing methods at WAPHL if possible and necessary<br>• Coordinate sample testing with reference labs or CDC as needed |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services  
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Washington State CEMP

| Non-Pharmaceutical Interventions (NPIs) | • Continue implementation of appropriate Indirect NPIs (see Attachment C) to limit spread of the disease should it occur within the jurisdiction<br>• Implement appropriate Direct Individual-Level NPIs (see Attachment C) as needed to prevent spread of disease<br>• Prepare to implement appropriate Direct Community-Level NPIs (see Attachment C) in the event that disease spread continues | • Review all guidance documents and update as needed for the situation<br>• Issue policy guidance and recommendations for NPIs for this specific incident<br>• Identify resources to support local planning for and implementation of NPIs<br>• Evaluate and implement required border control measures (entry, exit, or both) as appropriate for the situation |
|---|---|---|
| Medical care and countermeasures | • Consider implementation of voluntary contact chemoprophylaxis based on current recommendations<br>• Provide guidance to clinicians about recommended treatment, prophylaxis, and infection-control guidelines<br>• Partnering with Healthcare Coalitions, assess impact on medical care facilities; identify whether medical resources are sufficient to manage ill persons and conduct case-based control efforts; determine if state or other outside assistance is required<br>• Partner with Healthcare Coalitions to share healthcare system resources and situational awareness | • Update and release guidance documents as needed for the situation<br>• Review options and develop policy guidance for provision of mass health care with scarce resources<br>• Consider development of prioritization procedures for materials that could be in short supply<br>• Conduct regulatory readiness steps including preparing to request and to authorize regulatory waivers for healthcare systems and facilities<br>• Evaluate whether transmission and severity assessments merit requests for Strategic National Stockpile (SNS) countermeasures or other therapeutics<br>• Contact coordinators of the local and/or regional SNS regarding the potential distribution of SNS countermeasures, as appropriate |
| Vaccine (if applicable) | • Coordinate with local, tribal, and state partners to prepare for a vaccine campaign as appropriate<br>• Prepare for a vaccine campaign; refine vaccine distribution and administration plans if a campaign will be initiated, including mass vaccination initiatives and coordination with pharmacies and other groups as appropriate, as well as vaccine accountability processes | • Develop and provide technical support and guidance to local, tribal, and private sector partners in preparation for and during a potential campaign<br>• Prepare for a vaccine campaign; refine vaccine distribution and administration plans if a campaign will be initiated, including mass vaccination initiatives and coordination with pharmacies and other groups as appropriate, as well as vaccine accountability processes |
| Risk communication | • Develop or update and implement a comprehensive media relations and outreach plan in close collaboration with local, tribal, and state partners<br>• Disseminate risk communication messages, including what is known, what is not known, and what is being done by public health officials<br>• Disseminate messages for travelers, as well as community mitigation (NPI) messages, when to seek care, and how to care for ill persons at home as appropriate. | • Develop or update a media relations and outreach plan; disseminate inclusive risk communication messages<br>• Collaborate, coordinate, and engage with partners and stakeholders<br>• Conduct inclusive briefings with local, regional, and state response partners, businesses, tribes, and health-care facilities on the potential for escalation, response actions underway, and preparedness steps that partners should consider<br>• As requested, develop and share inclusive and accessible risk communication tools |

<u>Initiation Phase</u>

Once cases are present in Washington State, the initiation phase begins with the presence of evidence that the disease poses a serious threat to public health. Such evidence might include emerging data from other parts of the nation/world that indicate sustained human-to-human transmission, evidence of human-to-human transmission within Washington, or other scientific evidence indicating that the disease carries outbreak potential with or without effective public health intervention.

**Table 4 – Initiation Phase – Expected Response Actions**

| Domain | Local/Tribal Level (includes unaffected jurisdictions) | State Level |
|---|---|---|
| **Incident management and operational coordination** | • Continue or initiate actions described for the recognition phase (Table 3 above)<br>• Consider activation of local and/or tribal emergency operations center<br>• Consider declaring a state of emergency | • Continue or initiate actions described for the recognition phase<br>• Consider activation of state emergency operations center and/or state agency department operations centers<br>• Consider Governor's proclamation of emergency |
| **Surveillance and epidemiology** | • If affected, continue enhanced surveillance; conduct case investigation and response<br>• If unaffected, prepare for investigation and response<br>• Enhance surveillance efforts with other local and tribal partners<br>• Conduct surveillance for hospitalizations and deaths | • Deploy state agency resources to assist affected jurisdictions as requested<br>• Conduct enhanced surveillance statewide<br>• Gather and distribute critical medical and public health intelligence<br>• Share intelligence with federal agency partners |
| **Laboratory** | • Continue to facilitate confirmation of all suspected cases at an appropriate public health laboratory and facilitate timely notification of results to patients, providers, and public health officials | • Implement surge plans and facilitate rapid testing and notification of laboratory results |
| **Non-Pharmaceutical Interventions (NPIs)** | • Implement Direct Individual-Level NPIs (see Attachment C) for cases and contacts<br>• Implementation of appropriate Direct Community-Level NPIs (see Attachment C) to prevent further spread of the disease<br>• Assess whether certain populations may be disproportionately impacted by the disease, or by response efforts and if so, engage with these communities to mitigate impacts | • Obtain and deploy resources to support local planning for and implementation of NPIs<br>• Evaluate and implement required border control measures (entry, exit, or both) as appropriate for the situation including at air and sea ports as indicated, in close collaboration with the CDC |
| **Medical care and countermeasures** | • Monitor the demand for healthcare services and assess whether assistance is needed to implement medical surge<br>• Review and prepare to deploy a mortuary surge (mass fatality) plan | • Monitor the healthcare surge and stress on the healthcare system, including provision of key medical resources and tools, as needed<br>• Consider requesting SNS antiviral drugs and other materiel reserves if needed |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services                                    Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

| | | |
|---|---|---|
| | • Consider deployment of local caches and/or requesting state/federal resources to support the healthcare system<br>• Consider implementation of chemoprophylaxis of exposed persons based on current recommendations if applicable | • Conduct advanced planning to anticipate resource needs into the future; begin to acquire resources to meet anticipated needs |
| **Vaccine** | • Implement vaccination campaign if a vaccine is available, appropriate for the disease, and the state and federal governments support the decision to do so<br>• Assure accountability for vaccines throughout the distribution processes | • Implement vaccination campaign if a vaccine is available, appropriate for the disease, and the state and federal governments support the decision to do so<br>• Update the state distribution plan based on CDC prioritization guidelines, estimated state allocation of vaccine, and epidemiology of the disease within the state<br>• Assure accountability for vaccines throughout the distribution processes |
| **Risk communication** | • Disseminate updated risk messages, including providing anticipatory guidance or information on what might be expected<br>• Share information regarding antivirals and the possible implementation of NPIs as appropriate<br>• Continue to provide regular updates to key partners, stakeholders, elected officials, and the media | • Disseminate updated risk messages, including providing anticipatory guidance or information on what might be expected<br>• Share information regarding antivirals and the possible implementation of NPIs as appropriate<br>• Continue to provide regular inclusive updates to key partners, stakeholders, elected officials, and the media |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Washington State CEMP

<u>Acceleration Phase</u>

The acceleration phase of a communicable disease emergency includes a consistently increasing number of cases of the disease despite previous public health and healthcare interventions.

**Table 5 – Acceleration Phase – Expected Response Actions**

| Domain | Local/Tribal Level (includes unaffected jurisdictions) | State Level |
|---|---|---|
| **Incident management and operational coordination** | • Continue actions described for the initiation phase (Table 4 above)<br>• Activate local and/or tribal emergency operations centers, even in unaffected jurisdictions<br>• Proclaim a local state of emergency<br>• Implement and maintain processes to track the effectiveness of public health interventions | • Continue actions described for the initiation phase (Table 4 above)<br>• Request activation of the state emergency operations center and DOH Incident Management Team (IMT)<br>• Request Governor's proclamation of emergency<br>• Implement and maintain processes to track the effectiveness of public health interventions |
| **Surveillance and epidemiology** | • If affected, transition surveillance from individual case confirmation to severe disease and RHINO surveillance as appropriate<br>• If unaffected, continue individual case confirmation if possible<br>• Monitor for changes in epidemiology<br>• Continue enhanced surveillance for deaths | • Deploy state agency resources to assist affected jurisdictions as requested<br>• Conduct enhanced surveillance statewide<br>• Gather and distribute critical medical and public health intelligence<br>• Share intelligence with federal agency partners |
| **Laboratory** | • Facilitate laboratory confirmation a sample of cases or all cases as requested<br>• Implement revised specimen submission protocol per CDC and DOH guidance as appropriate | • Provide laboratory confirmation all cases or a sample of cases as resources allow and as required for virologic surveillance<br>• Implement revised specimen submission protocol per CDC guidance as appropriate |
| **Non-Pharmaceutical Interventions (NPIs)** | • Implement widespread NPIs (all types as appropriate) including Direct Community-Level NPIs<br>• Monitor the effectiveness of NPIs<br>• Monitor for adverse impacts of NPIs on society and coordinate with emergency management and other partners to mitigate adverse effects as possible | • Obtain and deploy resources to support local implementation of NPIs<br>• Forecast adverse effects of NPIs on society and leverage state agency and federal resources to mitigate these effects |
| **Medical care and countermeasures** | • Monitor the demand for healthcare services and provide assistance to implement medical surge including establishing alternate care facilities (ACFs)<br>• Deploy a mortuary surge (mass fatality) plan if needed<br>• Deploy local caches and request state/federal resources to support the healthcare system as needed | • Monitor the healthcare surge and stress on the healthcare system, including provision of key medical resources and tools, as needed.<br>• Provide policy guidance to support medical surge including use of ACFs, implementation of Crisis Standards of Care, and rationing of critical medical resources<br>• Continue advanced planning to anticipate resource needs into the future; begin to acquire resources to meet anticipated needs |

| | | |
|---|---|---|
| **Vaccine** | <ul><li>Implement vaccination campaign if a vaccine is available, appropriate for the disease, and the state and federal governments support the decision to do so</li><li>Assure accountability for vaccines throughout the distribution processes</li></ul> | <ul><li>Implement vaccination campaign if a vaccine is available, appropriate for the disease, and the state and federal governments support the decision to do so</li><li>Continue to update the state distribution plan based on CDC prioritization guidelines, estimated state allocation of vaccine, and epidemiology of the disease within the state.</li><li>Assure accountability for vaccines throughout the distribution processes</li></ul> |
| **Risk communication** | <ul><li>Disseminate updated risk messages, including providing anticipatory guidance or information on what might be expected</li><li>Share information regarding antivirals and the possible implementation of NPIs as appropriate</li><li>Continue to provide regular updates to key partners, stakeholders, elected officials, and the media</li></ul> | <ul><li>Activate statewide ESF 8 Joint Information System (JIS)/Joint Information Center (JIC)</li><li>Disseminate updated inclusive risk messages in collaboration with state, regional, and federal partners, including providing anticipatory guidance or information on what might be expected</li><li>Share information regarding antivirals and the possible implementation of NPIs as appropriate</li><li>Continue to provide regular inclusive updates to key partners, stakeholders, elected officials, and the media</li></ul> |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Washington State CEMP

Deceleration Phase

The deceleration phase of a communicable disease emergency includes a consistently decreasing number of cases of the disease in Washington State.

**Table 6 – Deceleration Phase – Expected Response Actions**

| Domain | Local/Tribal Level (includes unaffected jurisdictions) | State Level |
|---|---|---|
| **Incident management and operational coordination** | • Continue actions described for the acceleration phase (Table 5 above)<br>• Evaluate proportionality of response activities and ensure that activities remain appropriate to the current situation<br>• Continue to track the effectiveness of interventions. | • Continue actions described for the acceleration phase (Table 5 above)<br>• Evaluate proportionality of response activities and ensure that activities remain appropriate to the current situation<br>• Continue to track the effectiveness of public health interventions |
| **Surveillance and epidemiology** | • Continue severe disease and RHINO surveillance<br>• Monitor for changes in epidemiology | • Continue severe disease and RHINO surveillance<br>• Monitor for changes in epidemiology<br>• Continue enhanced surveillance statewide<br>• Gather and distribute critical medical and public health intelligence |
| **Laboratory** | • Continue to facilitate confirmation of all suspected cases at an appropriate public health laboratory and facilitate timely notification of results to patients, providers, and public health officials | • Continue to facilitate confirmation of all suspected cases<br>• Coordinate sample testing with reference labs or CDC as needed |
| **Non-Pharmaceutical Interventions (NPIs)** | • Assess, plan for, and implement phased and targeted cessation of NPIs if appropriate | • Continue to assist with monitoring the effectiveness of and assessing adverse effects of NPIs on society |
| **Medical care and countermeasures** | • Maintain infection control strategies in the community<br>• Initiated targeted and phased cessation of medical surge strategies as appropriate | • Provide planning and policy support to guide infection control strategies and cessation of medical surge measures |
| **Vaccine** | • Continue vaccination response as appropriate and sustain vaccine accountability processes | • Continue vaccination response as appropriate and sustain vaccine accountability processes |
| **Risk communication** | • Disseminate updated risk messages<br>• Provide information on measures to prepare for and respond to possible additional waves of disease<br>• Continue to provide regular updates to key partners, stakeholders, elected officials, and the media | • Disseminate updated inclusive risk messages<br>• Provide inclusive information on measures to prepare for and respond to possible additional waves of disease<br>• Continue to provide regular inclusive updates to key partners, stakeholders, elected officials, and the media |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services                    Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Preparation Phase

The preparation phase of a communicable disease emergency is characterized by low outbreak activity in Washington State with possible continued transmission in other states or other parts of the world. The purpose of this phase is to facilitate preparation for future waves of disease that may occur.

**Table 7 – Preparation Phase – Expected Response Actions**

| Domain | Local/Tribal Level (includes unaffected jurisdictions) | State Level |
|---|---|---|
| Incident management and operational coordination | • Continue actions described for the deceleration phase (Table 6 above) as appropriate<br>• Consider deactivation of local/tribal emergency operations centers<br>• Prepare for subsequent waves<br>• Develop an after-action report and improvement plan to document lessons learned<br>• Consider suspending emergency declarations | • Continue actions described for the deceleration phase (Table 6 above) as appropriate<br>• Consider deactivation of state emergency operations center and state agency emergency coordination centers<br>• Prepare for subsequent waves and develop triggers for reactivation of emergency operations centers<br>• Develop an after-action report and improvement plan to document lessons learned<br>• Consider suspending emergency declarations |
| Surveillance and epidemiology | • Continue severe disease and RHINO surveillance to detect acceleration to the next wave<br>• Resume conducting routine non-emergency surveillance | • Continue severe disease and RHINO surveillance to monitor progress of the incident and detect acceleration to the next wave<br>• Resume conducting routine non-emergency surveillance |
| Laboratory | • Return to routine surveillance and testing methodologies | • Return to routine surveillance and testing methodologies |
| Non-Pharmaceutical Interventions (NPIs) | • Modify NPIs as needed and as appropriate<br>• Continue to promote Indirect NPIs as appropriate | • Provide assistance with NPI modification as needed |
| Medical care and countermeasures | • Monitor medical surge trends<br>• Replenish stockpiles and caches as possible<br>• Monitor medical countermeasure usage trends | • Monitor medical surge trends<br>• Replenish stockpiles and caches as possible<br>• Monitor medical countermeasure dispensing and usage trends |
| Vaccine | • Continue vaccination response using epidemiological data to support vaccination prioritization in anticipation of a subsequent wave | • Continue vaccination response using epidemiological data to support vaccination prioritization in anticipation of a subsequent wave |
| Risk communication | • Disseminate updated risk messages including information on measures to prepare for and respond to possible additional waves of disease | • Disseminate updated risk messages including information on measures to prepare for and respond to possible additional waves of disease |

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 28 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

### E. Additional Roles and Responsibilities during Communicable Disease Emergencies

When a communicable disease emergency exists, enhanced support and coordination among the healthcare and public health systems across all jurisdictions statewide is needed. The following describes the roles and responsibilities of each entity during a communicable disease emergency, and must be carried out in addition to the non-emergency roles and responsibilities of each entity.

The responsibilities listed below are general, and expectations may differ based upon the specific demands of a given communicable disease emergency. This is not an exhaustive list of expected response actions, roles, and responsibilities. Generally, the listed roles and responsibilities will be performed in each of the jurisdictions impacted by any communicable disease emergency.

Hospitals and other healthcare facilities

The core functions of hospitals, healthcare systems, and other healthcare facilities in a communicable disease emergency are to screen, diagnose, and treat patients known or suspected to have the infection, to take actions within the facility to control the spread of the disease, and to maintain continuity of critical healthcare services. To execute these core functions, such entities must:

- Maintain the capability to surge in order to care for a greater number of patients with greater severity of illness than in non-emergency conditions.
- Provide information to the HCCs, LHJs, and DOH for situational awareness including: facility operating status, capabilities, resources on hand, resource needs, case counts, exposed healthcare workers, and other important matters.
- Use existing communications and information sharing tools such as WATrac to share information and communicate with response partners.
- Provide resource and technical assistance to other healthcare facilities as able when requested.
- Request resources through established processes when needed.
- Support epidemiological investigation and public health interventions as requested.
- Identify staff persons who have or may have been exposed to communicable disease, notify the LHJ, and conduct follow-up monitoring and post-exposure therapy as appropriate.
- Take actions to protect healthcare workers following the most up-to-date guidance from the CDC and DOH including establishing process and procedures, training staff, providing appropriate PPE, and other protective actions.

Healthcare Coalitions (HCCs)

The function of the Healthcare Coalitions (HCCs) during a communicable disease emergency will vary by jurisdiction and HCC capability, however HCCs are generally expected to:

- Facilitate situational awareness gathering and information sharing among healthcare system partners in the region including hospitals, urgent care centers, long term care facilities (LTCs), EMS agencies, public health agencies, and emergency management agencies.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 29 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

- As possible, facilitate resource sharing among healthcare partners within the region, including material resources, technical knowledge, and training.
- Serve as a channel for bidirectional information sharing from DOH and LHJs to coalition partners and from coalition partners to DOH and LHJs. (Refer to Figure 2 below)

**Figure 2 – General Support and Coordination Framework**



*This graphic does not reflect relationships with Local and State Emergency Management agencies that are necessary for information sharing and resource requesting. Please refer to Figures 3 and 4 for a more detailed description of these relationships.

**There is overlap among local health and healthcare coalition partners. This underscores the need for close coordination among LHJs and HCCs to develop and maintain Common Operating Picture.

<u>Emergency Medical Services (EMS) and other first response agencies</u>

During a communicable disease emergency, EMS and other first responder agencies are expected to continue to respond to emergency calls, provide emergency medical care in the prehospital environment, and to transport ill and injured persons to appropriate healthcare facilities. To do this, EMS and other first responder agencies are expected to:

- Assure availability of staffing and resources to meet an increased demand for services.
- Request resources through established processes when needed.
- Support epidemiological investigation and public health interventions as requested.
- Identify staff persons who have or may have been exposed to communicable disease, notify the LHJ, and conduct follow-up monitoring and post-exposure therapy as appropriate.
- Take actions to protect healthcare workers following the most up-to-date guidance from the CDC, DOH, and LHJs including establishing process and procedures, training staff, providing appropriate PPE, and other protective actions.
- Provide resources to assist other EMS/first responder agencies and jurisdictions as possible when requested.

<u>Public Safety Answering Points (PSAPs) and Dispatch Centers</u>

During a communicable disease emergency, PSAPs and dispatch centers are expected to continue to answer emergency calls, dispatch appropriate resources to emergencies, and to obtain and transmit critical information to EMS and other first responders. To do this, PSAPs and dispatch centers are expected to:

- Assure availability of staffing and resources to meet an increased demand for services.
- Request resources through established processes when needed.
- Be aware of and follow the most up-to-date guidance from the CDC, DOH, LHJs, and the Washington Emergency Management Division (EMD) regarding screening for communicable disease.
- Assess risk of each emergency call and notify responders of the level of risk of communicable disease exposure posed by the patient if applicable.

<u>Local Health Jurisdictions (LHJs) and Tribal Governments</u>

Local Health Jurisdictions (LHJs) and Tribal Governments are generally responsible for developing and implementing activities in order to protect the health of the public within their jurisdiction. During a communicable disease emergency this mission remains the same but also includes other activities to promote information sharing and operational coordination:

- Carry out health officer recommendations and orders to control the spread of the disease within the jurisdiction including the implementation of non-pharmaceutical interventions such as isolation, quarantine, and social distancing, or as appropriate, medical countermeasures including vaccination and prophylaxis.
- Coordinate with neighboring jurisdictions to aid in the implementation of disease control measures.
- Investigate the source of the disease, suspected cases, contacts, and possible environmental sources of disease as appropriate.

- Conduct monitoring of exposed and possibly exposed individuals to identify onset of illness and refer to appropriate treatment.
- Facilitate laboratory testing and case confirmation for suspected cases of disease.
- Gather relevant information from healthcare entities, other government agencies, schools, childcare facilities, and major employers as appropriate.
- Provide relevant situational awareness and other information to DOH and other assisting and cooperating agencies as appropriate.
- Assess available resources to carry out public health interventions, identify the need for assistance, and request additional resources as needed through established channels.
- Maintain processes through which to accept aid arriving from outside of the jurisdiction
- Coordinate with HCCs to support the healthcare system and share information among healthcare system entities.
- Support distribution and administration of medical countermeasures as appropriate
- Provide resources as possible to support requests for mutual aid from outside jurisdictions.

Local Health Officers (LHOs) and Tribal Health Officers

The core responsibility of Local and Tribal Health Officers during a communicable disease emergency is to order all necessary and effective measures to control spread of the disease within their jurisdiction. To control the spread of communicable disease in the most effective manner possible, health officers must:

- Obtain information and intelligence about the nature, scope, and scale of the communicable disease emergency in collaboration with the LHJ and neighboring jurisdictions.
- Have a clear understanding of the nature of the pathogen including its transmission modalities, treatment options, at-risk populations, and other key considerations.
- Decide upon and recommend or order implementation of interventions that, according to the available evidence and best judgment of the LHO, are necessary and effective in controlling the spread of the disease.
- Monitor the effect of disease control measures. Adjust recommendations/orders based upon the effect of enacted measures.
- Cooperate with law enforcement officials, particularly county sheriffs, to appropriately enforce the ordered interventions.
- Coordinate and share all pertinent information with neighboring jurisdictions, other LHOs, and DOH in a timely manner.

Washington State Department of Health (DOH)

DOH acts on the order and instruction of the Secretary of Health to protect the health of the public and control the spread of disease throughout the state. The Secretary of Health has the same authority as the LHO, but he or she shall not exercise this authority except under specific circumstances identified in RCW 43.70.130 (7). In a communicable disease emergency, DOH will:

- Coordinate the healthcare and public health system response including gathering and sharing information and relevant situational awareness, which may include

facility operating status, hospital bed capacity, case counts, laboratory testing results, availability of vaccine and medication, and other critical elements of information.

- Conduct and provide access to laboratory testing including receiving and accessioning specimens, shipping to outside laboratories as needed, and receiving and communicating results of laboratory tests.
- Support requests for material or technical assistance from healthcare and public health entities. This may include seeking resources through intrastate mutual aid, interstate mutual aid, or federal agency resources. This may also include providing resources such as incident management teams, isolation and quarantine facilities and support teams, epidemiology task forces, and other resources from DOH or other state agencies.
- Identify needs for, allocate, and acquire vaccine as needed and as appropriate for the incident. Conduct public and provider outreach and education efforts regarding vaccines and other disease prevention measures. Conduct vaccine accountability efforts and support local and tribal health jurisdictions in assuring vaccine accountability.
- Support collaboration and coordination among LHJs/LHOs, tribal governments, tribal health officers, HCCs, and other healthcare entities to reduce duplication of effort and support common approaches to controlling disease across the state.
- Provide policy support to authorities having jurisdiction throughout the state, including the Governor's office, to address ethical concerns and support decision making at all levels of government.
- Provide guidance and recommendations to healthcare providers regarding clinical management of patients as needed.
- Facilitate discussions among LHOs and LHJs to promote consistency in message, public health interventions, and disease reporting requirements.
- Coordinate public information and risk communication efforts for multi-county incidents or DOH-led responses to provide inclusive, consistent, timely, and accurate information to the public.
- Request, receive, and distribute medical countermeasures as appropriate
- Serve as a conduit of communications and information sharing to and from EMD, CDC, the US Department of Health and Human Services (HHS), and other assisting and cooperating agencies.

Law Enforcement Agencies and Officers

Law Enforcement Agencies (LEAs) and Officers (LEOs) play critical roles in enforcing public health interventions, supporting responder health and safety, and maintaining social function during a communicable disease emergency. LEAs and LEOs are expected to:

- Enforce lawful orders issued by the Local Health Officer (LHO)
- Collaborate with public health, emergency management, and other disciplines at all levels to protect responder health and safety
- As requested, supply personnel and technical guidance to secure critical resources and provide site security for healthcare facilities, points of distribution, and other sites as needed.

Case 3:20-cv-05423-BHS Document 34 Filed 06/15/20 Page 33 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

County Superior Courts

County Superior Courts serve as the venues for petitioning judicial orders that may be necessary or desirable in order to effectively implement and/or enforce LHO orders. As such, County Superior Courts are expected to:

- Collaborate with local health officers, other public health authorities, and law enforcement in advance of an emergency to promote mutual understanding of public health interventions and judicial processes.
- Hear petitions from local health officers regarding public health interventions and issue rulings according to the opinion of the court.

Washington State Department of Agriculture (WSDA)

WSDA is the lead state agency for veterinary and animal health issues. WSDA is an essential partner to provide technical guidance and expertise when a communicable disease may impact or originate in animal populations, and is a key partner during any zoonotic disease (ZD) incident. When appropriate, WSDA will:

- Assist in providing veterinary services for living and deceased animals including service animals, pets, livestock, and wild or captive animals.
- Coordinate and provide information on animal disease surveillance
- Provide or obtain access to resources and assets to support veterinary response needs
- Provide technical guidance on animal destruction and disposal efforts as needed
- Provide epidemiological support as needed

Local and Tribal Emergency Management Agencies (EMAs) and Tribal Governments

Local emergency management agencies (EMAs) are responsible for providing support to the LHJs, healthcare system, PSAPs, and EMS and other first responder agencies. During a communicable disease emergency, EMAs will:

- Receive resource requests from cities and towns, LHJs, healthcare entities, EMS and other first responder agencies, and other assisting and cooperating agencies within the jurisdiction and neighboring tribal governments.
- Communicate resources requests to the State Emergency Operations Center (SEOC) for fulfillment.
- Obtain critical information from all jurisdictional partners, the SEOC, DOH, and other assisting and cooperating agencies, to build and communicate situational awareness to the SEOC, LHJ, and DOH.
- Support the LHJ and/or tribal community in carrying out LHO or tribal health officer orders to prevent the spread of disease.
- Maintain continuity of government and critical community services. Take measures to maintain the orderly function of society within the jurisdiction throughout the course of the emergency.

Northwest Portland Area Indian Health Board

The Northwest Portland Area Indian Health Board (NPAIHB) is a trusted partner organization representing the 29 federally-recognized tribes in Washington as well as tribal nations in Oregon and Idaho. As an important coordinating entity, NPAIHB has the ability to:

- Coordinate and share information among the tribes located in Washington, and with DOH and other partners as needed.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 34 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

- Identify resource needs among Washington tribes and work to connect resources with the needs.

<u>Washington State Military Department, Emergency Management Division (EMD)</u>

During a communicable disease emergency, EMD is chiefly responsible for operating the SEOC which serves as the purveyor of information and situational awareness, resource ordering point, and forum for statewide operational coordination including among state agencies and between the state and local levels. To assure effective statewide response to communicable disease emergencies, EMD will:

- Provide communications and information sharing capability support for all Emergency Support Functions (ESFs) at the state level.
- Receive, process, and fulfill requests for resources from EMAs and state agencies through intrastate mutual aid, interstate mutual aid, and federal agency assistance.
- Provide access to Washington National Guard resources as needed.
- Facilitate obtaining a Governor's proclamation of emergency or disaster if appropriate.
- Provide central cost-tracking capability and maintain documentation to support reimbursement claims.
- Support information sharing and public information that is inclusive for the whole community.
- Maintain continuity of government and critical community services. Take measures to maintain the orderly function of society within the jurisdiction throughout the course of the emergency.

<u>Federal Agencies</u>

Federal partners including but not limited the CDC, HHS, Department of Defense, Federal Emergency Management Agency (FEMA), Indian Health Service (IHS), and the Food and Drug Administration (FDA) will support response with guidance, support, and coordination as requested and required. Federal agencies might be requested to:

- Promote coordination with other states, tribal nations, and foreign countries responding to a widespread communicable disease emergency.
- Provide assistance in obtaining resources through interstate or international mutual aid.
- Fulfill requests for federal agency resources including personnel, equipment, medical supplies, vaccines, and medications including the Strategic National Stockpile (SNS).
- Provide technical assistance and guidance to support disease control measures including case study data and recommendations for public health interventions.
- Coordinate border control and broad travel restriction issues through the CDC Division of Global Migration and Quarantine (DGMQ)
- Lead clinical and epidemiological research efforts nationwide and provide funding to support such efforts.
- Provide financial support for research, response, and/or recovery in relation to the communicable disease emergency.

## F.  Support and Coordination Frameworks for Communicable Disease Emergency Response

The below graphics are intended to clarify the flow of information and resource requests during a communicable disease emergency.

### Figure 3 - Minimum Required Information Sharing



Emergency Support Function 8 – Public Health, Medical, and Mortuary Services                     Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

### Figure 4 - Formal and Informal Resource Requests



# III.   ATTACHMENTS

Attachment A          Communicable Disease Emergency Severity Assessment Matrix

Attachment B          Framework for Ethical Response to Communicable Disease

Attachment C          Non-Pharmaceutical Interventions (NPI) Policy and Implementation
                      Playbook

Attachment D          Pandemic Influenza and Acute Viral Respiratory Infection (AVRI)
                      Response Considerations

Attachment E          Ebola Virus Disease (EVD) and Other Special Pathogen Disease (OSPD)
                      Statewide Response Framework

Attachment F          Health and Human Services (HHS) Region X Ebola Virus Disease (EVD)
                      and Other Special Pathogen Disease (OSPD) Regional Coordination
                      Concept of Operations

Attachment G          Bioterrorism Response Considerations

Attachment H          Zoonotic (ZD) and Vector Borne Disease (VBD) Response Concept of
                      Operations

Attachment I          Authorities and Relevant Legal Framework

## A. Communicable Disease Emergency Severity Assessment Matrix

This is a hybrid qualitative and quantitative assessment tool to <u>assist</u> in describing the severity and complexity of an anticipated or ongoing communicable disease emergency. The aggregate score obtained through the use of this matrix can be used to <u>estimate</u> the most appropriate type of response to the communicable disease emergency as described below.

This tool was developed by WA DOH after a careful review of the literature and in consideration of the CDC Pandemic Severity Index (PSI) and the WHO processes for characterizing influenza pandemic severity. The tool was developed to assess key criteria for communicable disease severity laid out by the WHO, and was validated using historical outbreak data.

To use this tool, identify the factor in each row of Table 9 that best describes the emergency and find its corresponding score in the column header. Write that number in the box in the same row of the right hand column. Once complete, total the score to obtain the total matrix score and identify the appropriate category in the table below. Table 8 directly correlates to Table 1 (Page 11) based on the Levels of Communicable Disease Incident in the right hand column of Table 8.

**Table 8 – Response Type by Matrix Score and Level of Communicable Disease Emergency**

| Total Matrix Score | Probable Characteristics and Type of Response | Corresponding Level (Table 1) |
|---|---|---|
| 17-25 | The disease is limited in impact and available treatments generally produce positive outcomes in those who are ill. Disease does not spread very easily and if treatment is needed, nearly any medical facility is capable of treating the disease. Response is led by the local health jurisdiction with basic assistance from neighboring jurisdictions or state agencies as needed. | 5 |
| 26-40 | The disease is usually minor but may be easily transmissible. The disease is well understood and treatment is widely available. Affected LHJs lead response. LHJs may have sufficient resources to manage this incident but may require a moderate degree of support from intrastate mutual aid or state agency resources. DOH provides support and coordination among responding jurisdictions as needed. | 4 |
| 41-55 | The disease is moderately severe and threatens to produce significant morbidity or mortality in some populations. Cases and contacts are distributed throughout the state. Most healthcare providers can safely treat suspected or confirmed cases. Public concern is significant but consistent with the severity of the threat. Response is led by DOH but is primarily carried out by LHJs, receiving close coordination and support from DOH. | 3 |
| 56-70 | The disease is severe and has limited or no specific treatment options. The disease is highly infectious and requires special training and equipment to manage safely. Public concern is severe. Response is led by DOH in close collaboration with all political subdivisions within the state and all state agencies, in order to consistently control the spread of the disease throughout the state, rapidly share information, manage resources effectively, and facilitate requests for interstate and federal aid. | 2 |
| 70-85 | The disease is novel with severe morbidity and mortality in the general population and has severe or catastrophic effects on social function. Response requires the full efforts and resources of all government agencies at the local, state, and federal level to contain the disease, treat the infected population, research and develop treatments, maintain continuity of government, and restore social function. | 1 |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services                    Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

### Table 9.1 - Communicable Disease Emergency Severity Assessment Matrix (Page 1)

| Categories | 1 | 2 | 3 | 4 | 5 | Score |
|---|---|---|---|---|---|---|
| **Characteristics of the Pathogen** | | | | | | |
| **Pre-Incident Pathogen Prevalence** | Very Common – endemic in Washington with frequent cases | Common –endemic in Washington with occasional cases | Uncommon – known pathogen not endemic in Washington State | Rare – known pathogen not endemic in the United States | Extremely Rare – pathogen is novel or emerging and may not be well understood | |
| **Modes of Transmission** | Direct fluid contact only (or food-borne only) | Direct and Indirect contact | Contact and Droplet (or Vector) | Airborne (with or without contact) | Multiple modes or unknown transmission | |
| **Precautions Required** | Standard only | Contact precautions | Contact and droplet precautions | Airborne precautions ± contact (N95 or PAPR) | Special precautions (DOT Category A or BSL 4 type) | |
| **Ease of Transmission ($R_0$ if available)** | Transmission is rare ($R_0$ 0-0.5) | Transmission is difficult ($R_0$ 0.5-1) | Moderately Transmissible ($R_0$ 1.0-2.0) | Easily transmissible ($R_0$ 2.5-4) | Highly infectious ($R_0$ >4) | |
| **Known Effective Treatment** | Known specific treatment widely available | Known specific treatment with limited availability | No known specific treatment, however supportive care often produces positive outcomes | No known specific treatment, morbidity and mortality remain high with supportive care | No known specific treatment or effective supportive care | |
| **Available vaccine/ prophylaxis** | Vaccine/prophylaxis widely available | Vaccine/prophylaxis available in region | Vaccine/prophylaxis with limited availability | Known vaccine/prophylaxis is unavailable | No known vaccine/prophylaxis | |
| **Morbidity** | Sequelae are rare (<10% of cases) and often minor in severity | Sequelae are rare (<10% of cases) and may produce significant disability | Sequelae are uncommon (10-20% of cases) and may produce significant disability | Sequelae are common (20-30% of cases) and may produce significant disability | Severe sequelae resulting in disability are common (>30% of cases) | |
| **Mortality (CFR if known)** | Fatalities are rare (CFR <0.5%) | Infrequent fatalities in patients with comorbidities (CFR <1%) | Occasional fatalities in the general population (CFR <1%) | Substantial fatalities in at-risk groups and frequent fatalities in the general population (CFR 1-10%) | Substantial fatalities in the general population (CFR >10%) | |
| | | | | | **Page 1 Total =** | |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services                    Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

### Table 9.2 - Communicable Disease Emergency Severity Assessment Matrix (Page 2)

| Categories | 1 | 2 | 3 | 4 | 5 | Score |
|---|---|---|---|---|---|---|
| **Characteristics of Incident Impact** | | | | | | |
| **Jurisdiction(s) affected** | Single county | More than one county | Widespread throughout the state | Throughout the state and also in neighboring state(s)/province(s) | Widespread throughout WA and the United States or worldwide. | |
| **Available resources** | Existing local resources are sufficient | Statewide resources are sufficient | Interstate or federal aid is needed | Federal and international aid are needed | Worldwide resources are not sufficient | |
| **Public Concern** | Minor media attention, minor or absent public concern | Moderate public concern easily managed with effective messaging | Significant media attention and public concern, susceptible to effective messaging | Significant public concern not susceptible to effective messaging | Public panic that threatens or produces failure of law and order | |
| **Population at risk** | Small, limited population at risk | Large but limited population at risk | Some age groups at significantly increased risk | Significant portion of the general population at risk | Whole general population at near equal risk | |
| **Social Function** | Society is functioning normally | Society functions with occasional gaps in private-sector services | Major services are intact but peripheral services have failed | Major public services are at risk or experience periodic failures | Social collapse is possible or imminent | |
| **Healthcare System Function** | Systems function normally | Systems are stretched but consistently meet all community needs | Systems mostly meet community needs with difficulty | Systems meet some but not most community needs | Systems fail to meet community needs | |
| **School/Daycare Absentee Rates** | Not significantly increased | Minor increase (<3% above average) | Moderate Increase (3-15% above average) | Significant absenteeism (15-30% above average) | Widespread absenteeism (>30% above average) | |
| **Major Employer Absentee Rates** | Not significantly increased | Minor increase (<3% above average) | Moderate Increase (3-15% above average) | Significant absenteeism (15-30% above average) | Widespread absenteeism (>30% above average) | |
| **Washington Case Counts (confirmed and probable)** | Single case or small cluster (<10 cases) | 10-100 cases | 100-1,000 cases | 1,000-10,000 cases | >10,000 cases in WA | |
| | | | | | **Page 2 Total =** | |
| | | | | | **Page 1 Total =** | |
| | | | | | **TOTAL =** | |

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 41 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

## B. Framework for Ethical Response to Communicable Disease

*(This ethical framework is adapted from the Alberta Health Ethical Framework for Responding to Pandemic Influenza and the WHO discussion paper: Addressing ethical issues in pandemic influenza planning).*

This framework is based on a set of well-recognized ethical principles and outlines a transparent process by which to assess potential actions during a communicable disease emergency. The purpose of this framework is to provide guiding principles to support decision making during a communicable disease emergency across the state.

Recognizing that each health officer and other individual having jurisdiction has the authority and may choose to employ divergent methods to control disease and conduct emergency response within that jurisdiction, it is expected that all decisions be made with the primary intention of protecting the health, well-being, and life safety of the general public. Severe or widespread communicable disease emergencies may pose significant ethical challenges and this tool should be used to support ethical policy decisions in such an incident.

Ethical Tensions in a Communicable Disease Emergency

Healthcare and public health systems experience tension among three primary responsibilities on a daily basis:

- Responsibility to each individual
- Responsibility to society at large
- Responsibility to healthcare providers

In the absence of an emergency, this tension is held in balance which allows hospitals and healthcare systems to focus primarily on serving each individual patient. Healthcare and public health resources are generally sufficient to meet the responsibility to society at large, and through advances in infection prevention and control and occupational health and safety, the responsibility to protect healthcare workers is usually managed effectively.

When a communicable disease emergency occurs, this careful balance must shift. Healthcare and public health resources may be limited and the risk to workers may be substantial. When risk to healthcare and public health workers increases, the ability to protect them from harm may be compromised and yet the responsibility to society and to the individual remains. As resources are consumed and demand for limited resources exceed the capability to meet the need, excess tension is created which must be resolved through ethical decision making in order to hold in balance these three responsibilities in a new environment. In cases where responsibilities to individuals and groups are held in tension, decision-makers can use the ethical principles below to find the best possible solution.

Ethical Principles

This ethical framework is based on equal concern and respect for all. This means that:

- Everyone matters
- Everyone matters equally – but this does not mean that everyone is treated the same
- The interests of each person are the concern of all of us, and of society
- The harm that might be suffered by every person matters, and so minimizing the harm that a communicable disease might cause is a central concern

The principles of equal concern and respect include a number of different ethical principles, which are discussed below. When a particular decision has to be made, using the list of principles can help in considering a range of ethical issues. It is not, however, a checklist for the one right answer.

Decision-makers will need to use the best information that is available to them at that time. Whether or not a decision was ethically sound will be judged in the context of the situation that existed at the time, rather than a normal situation. Often, there will be tension both within and between these principles - for example, in weighing different sorts of harm, and in trying to both minimize harm and to be fair. There are often no absolute right answers.

### 1. Respect

This principle means that:

- The Whole Community should be kept as informed as possible.
- When possible, people's personal choices about their treatment and care should be considered to the extent possible.
- When people are unable to make their own health care decisions and have not provided any written expressed wishes regarding their care, those who must decide for them should do so in consideration of what the person may have wanted, supported by the standards and duties of the health care providers involved in the decision at the time.

Respect applies to all individuals including patients, health care workers and the general public. There should be the widest possible involvement of people in planning for a communicable disease emergency. The urgency of the situation may mean that it is not possible to consult widely (or at all); however, treating people with respect means keeping them informed of the situation as much as possible. Respect means balancing people's personal choices with the reality of the situation.

### 2. Minimizing Harm Caused by the Disease

During a communicable disease emergency, some harm may be unavoidable. This principle means that there is a need to:

- Attempt to minimize the spread of the disease.
- Minimize the risk of complications for the ill.
- Utilize experience and existing evidence to fight the disease and to treat people who are ill.
- Avoid causing further harm (non-maleficence), including avoiding therapies or interventions where the potential risks outweigh the potential benefits
- Minimize the disruption to society caused by the disease.

This principle is intended to cover the physical, psychological, social, and economic harm that might result from a communicable disease emergency. Actions relevant to minimizing harm include those that prevent the spread of the disease, save lives, support the healthcare system in saving lives, and are designed to help society cope with and recover from the emergency.

*3.  Fairness*

The principle of fairness means that:

- Everyone matters equally but may not be treated the same.
- People with an equal need for and chance of benefiting from health resources should have an equal chance of receiving them regardless of other factors.

The implications of the principles of fairness and minimizing harm often arise together in planning and policy decisions. In considering a particular decision, a useful first question might be: How could harm be minimized? Then it is necessary to ask: Would it be fair to do this? Could the same outcome be achieved in a fairer way? This involves thinking about the interests of everyone who may be affected by the decision. There need to be good reasons to treat some people differently from others, which the decision-makers must be prepared to explain. The decision-making *process* also needs to be fair, which is considered part of the principle of good decision making below.

*4.  Working together*

This principle means:

- Working together to plan for, respond to, and recover from disease outbreaks
- Helping one another
- Being prepared to share information that will help others, without compromising the privacy and dignity of the individuals involved

Communicable disease emergencies affect all parts of society, and it is crucial that different agencies collaborate and coordinate at local, regional, state, levels. Working together also implies strong links at the interstate, federal and international, levels. This includes both providing and seeking timely information from partners across the Pacific Northwest and the United States.

*5.  Reciprocity*

The principle of reciprocity is based on the concept of mutual exchange. Therefore:

- If people are asked to take increased risks, or face increased burdens during a communicable disease emergency, they should be supported in doing so, and the risks and burdens should be minimized as far as possible.

Some people, such as healthcare workers, may face heavy burdens in carrying out their duties during a communicable disease emergency. It is important to think about how to minimize those burdens while providing care and support to those heavily burdened while serving society during a communicable disease emergency.

*6.  Proportionality*

This principle means that:

- Those responsible for providing information should give people the most accurate information available.
- Decisions on actions that may affect people's daily lives should be proportionate to the risk and benefits that may result from the proposed action. Proportionality requires that the least restrictive means possible is used when limiting liberty and freedom in the face of a communicable disease emergency.

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services               Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

*7. Flexibility*

This principle means that:

- Plans and response activities should be adapted to take into account new information and changing circumstances.
- People should have as much opportunity as possible to express concerns about or disagreement with decisions that affect them.

*8. Good decision making*

Respect for this principle involves the following components:

*Openness and transparency:*

- This means that those making decisions should:
  - Consult those concerned as much as possible in the time available.
  - Be open about what decisions need to be made and who is responsible for making them.
  - Be as open as possible about what decisions have been made and why they were made.

*Inclusiveness*

- This means that those making decisions should:
  - Involve people to the greatest extent possible in aspects of planning that affect them.
  - Take into account all relevant views expressed.
  - Work to make sure that particular groups are not excluded. Some people may find it harder to access communications or services than others, and decision-makers should consider how they can express their views and have a fair opportunity to get their needs for treatment or care met.

*Accountability*

- This means that those responsible for making decisions may have to justify the decisions that they do or do not make.

*Reasonableness*

- This means that decisions should be:
  - Rational, practical, and evidence-based
  - Not arbitrary
  - The result of an appropriate process, taking into account how quickly a decision has to be made and the circumstances in which a decision is made.

Ethical Decision Assessment Worksheet

The worksheet on the following page is intended to help a decision maker weigh potential options against the ethical principles identified above. This tool is intended to be used to help inform a decision in conjunction with appropriate legal, scientific, policy, and programmatic guidance.

*Example: You witness a coworker who has worked with the organization for a long time taking some basic supplies out of the office copy room.*

**Table 10 – EXAMPLE Ethical Decision Assessment Worksheet**

| Ethical Principles | Option 1: Report this to your supervisor immediately. | Option 2: Confront the coworker about what you saw. | Option 3: Do nothing. |
|---|---|---|---|
| **Respect** | This respects the workplace and your supervisor, as they will be informed of the incident. It doesn't necessarily respect the employee as he was not informed before the report. | This option incorporates respect, as it addresses the issue but gives the employee a chance to express their side of the story. Your supervisor may not be informed, but since inappropriate actions may be corrected, it may not be necessary. | This option does not reflect respect, as you have made no effort to understand what you saw or let your supervisor know if there is in fact an issue. |
| **Proportionality** | This option seems out of proportion. Without taking the time to understand the situation, one might actually report inaccurate information that could jeopardize the reputation of the employee. | This option is in proportion. It addresses the issue, but allows the employee to share their side of the story and possibly correct the inappropriate actions without losing face, especially since the supplies are not worth much money. | It could be argued that this option is proportional as the supplies are not worth much, and their loss won't greatly affect the business. Not reporting it will ensure that the employee's reputation is not duly or unduly affected. |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

**Table 11 - Ethical Decision Assessment Worksheet)**

| *Ethical Principles* | *Option 1* | *Option 2* | *Option 3* |
|---|---|---|---|
| | | | |
| **Respect** | | | |
| **Minimizing the Harm** | | | |
| **Fairness** | | | |
| **Working Together** | | | |
| **Reciprocity** | | | |
| **Proportionality** | | | |
| **Flexibility** | | | |
| **Good Decision Making** | | | |

### Summary of Decision

| | |
|---|---|
| **For the question:** | |
| **We recommend that:** | |
| **This allows us to:** | |
| **This solution does not:** | |
| **We argue that this is justified because:** | |

## C. Non-Pharmaceutical Interventions (NPI) Policy and Implementation Playbook

Non-Pharmaceutical Interventions (NPIs) are among the most effective methods to control the spread of communicable disease. While vaccines are available to protect against many pathogens and other medical countermeasures are available for some pathogens of concern, there are many pathogens with outbreak potential for which no effective vaccine or medical countermeasure exists.

When implemented early and effectively, evidence indicates that NPIs can be *at least* as effective as antiviral drugs. The key to successful NPI implementation is to implement each intervention based on pre-established triggers based on early case detection and emerging epidemiological data.

The following policy "playbook" provides a brief analysis of possible Non-Pharmaceutical Interventions (NPIs) that might be implemented by state, local, or tribal health officers and briefly discusses some potential costs and benefits of each along with recommendations for when the use of each intervention *may* be appropriate. This is not a comprehensive list of all possible NPIs.

When ordering interventions, the individual having authority must consider the practicability of implementation and be confident that implementation of the ordered interventions is not only feasible, but also ethically sound, the least restrictive effective intervention, and scientifically sound.

It is critical to consider that virtually any NPI will be accompanied by significant equity concerns. Each intervention has the potential to disproportionately impact certain people or groups of people, and therefore implementation should be planned and conducted carefully.

Effective risk communications and public information are critical aspects of the successful implementation of NPIs. All jurisdictions are strongly encouraged to involve public information personnel in all phases of planning for, implementing, and evaluating NPIs.

The contents of this document are based on sound scientific evidence and were developed and vetted by a diverse group of epidemiologists, health officers, and emergency planners. This policy playbook is NOT a substitute for effective planning, ethical decision-making, sound scientific judgment, or legal counsel and should not be interpreted as binding or comprehensive guidance for response to any specific hazard. This document must not be the sole source of information when considering the most appropriate methods with which to control a communicable disease. The contents of this document are derived from the CDC's NPI guidance (www.cdc.gov/nonpharmaceutical-interventions) and the peer-reviewed evidence base.

Table 12 below is organized to analyze specific interventions. Table 13 is designed to list interventions that may be effective for pathogens organized by route of transmission. Table 14 provides example decision packages for common categories of communicable disease threat, organized by outbreak level (See Table 1, Page 11).

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Washington State CEMP

**Table 12 – Analysis of Potential NPI options**

| Non-Pharmaceutical Intervention Option | Success Factors | Possible Drawbacks | Possible Benefits | Appropriate Use Scenario | Possible Implementation Methods |
|---|---|---|---|---|---|
| **Indirect Interventions**<br>The following interventions rely heavily upon effective public messaging to encourage behaviors that will help to reduce the spread of the disease. These may or may not be focused to specifically target high-risk groups, such as international travelers when disease transmission is occurring abroad. These interventions are the least restrictive of all NPIs, quick to implement, inexpensive, and effective. These interventions are listed in no specific order. | | | | | |
| **Increase hand washing and use of alcohol-based hand sanitizer** | Success depends on public education effectiveness, public compliance, and access to hand washing/sanitizing stations | None anticipated | Quick and easy to implement; effective at reducing illness due to direct/indirect contact | Diseases transmitted by direct contact, indirect contact, and/or droplet routes | Inclusive public messaging campaign, flyers in public locations, hand sanitizer stations in accessible areas |
| **Cover coughs and sneezes** | Success depends on public education effectiveness and public compliance | None anticipated | Quick and easy to implement; effective at reducing illness due to droplet transmission | Diseases transmitted by droplet or airborne routes | Inclusive public messaging campaign, flyers in public locations, provide tissues in accessible areas |
| **Use a mask in public if you are sick** | Success depends on public education effectiveness, public compliance, and access to masks | Evidence base for effectiveness of mask use by the public is not conclusive. May degrade compliance with other NPIs | If used correctly and consistently, masks *may* reduce transmission via droplet | Diseases transmitted by droplet | Inclusive public messaging, flyers in public locations, provide masks in public locations, provide list of locations to purchase |
| **Abstain from sex or use condoms when having sex** | Success depends on public education effectiveness, public compliance, and access to condoms | Some religious and cultural groups do not support the use of condoms. Messaging may alienate some members of the public | If used correctly and consistently, condoms offer protection against sexually-transmitted diseases. Abstinence from sex is completely effective. | Diseases transmitted by direct fluid contact; diseases with known or suspected potential for sexual transmission | Inclusive public messaging campaign, flyers in public locations, provide condoms to high-risk groups, provide list of locations from which condoms may be purchased |
| **Use EPA-registered insect repellent when outdoors** | Success depends on public education effectiveness, public compliance, access to repellent | Some individuals do not support the use of chemical insect repellent and may not comply | EPA-registered insect repellents reduce the risk of insect bites | Vector-borne diseases transmitted by mosquitos, ticks, flies, and other insects | Inclusive public messaging, flyers in public locations, provide insect repellent to high-risk groups, provide list of locations to purchase |
| **Cover exposed skin when outdoors and avoid outdoor activities at night** | Success depends on public education effectiveness and public compliance | None anticipated | Covering exposed skin and remaining indoors after dark reduce the risk of insect bites | Vector-borne diseases transmitted by mosquitos, ticks, flies, and other insects | Inclusive public messaging campaign, flyers in accessible locations |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Washington State CEMP

| Non-Pharmaceutical Intervention Option | Success Factors | Possible Drawbacks | Possible Benefits | Appropriate Use Scenario | Possible Implementation Methods |
|---|---|---|---|---|---|
| Eliminate standing water in your environment | Success depends on public education effectiveness and public compliance | None anticipated | Eliminating standing water may reduce insect habitat | Vector-borne diseases transmitted by mosquitos, ticks, flies, and other insects | Public messaging campaign, flyers in accessible locations |
| Avoid insects when sleeping: use permethrin-treated nets, window screens, air conditioning (A/C) | Success depends on public education effectiveness, public compliance, and access to nets, screens, and A/C | Many individuals will be unable to comply with this recommendation due to lack of A/C and inadequate resources to purchase nets and window screens | Many insects are more active during twilight and night hours, so use of these interventions reduces the risk of bites | Vector-borne diseases transmitted by mosquitos, ticks, flies, and other insects | Inclusive public messaging campaign, flyers in accessible locations, provide nets to high-risk groups, provide list of locations from which insect repellent may be purchased |
| Seal your home to prevent rodent infestations | Success depends on public education effectiveness, technical aptitude, and financial resources | Many individuals will be unable to comply with this recommendation due to lack of A/C and inadequate | Sealing the home can prevent rodent access and reduce risk of transmission of vector-borne diseases | Vector-borne diseases transmitted by rodents | Inclusive public messaging campaign, provide free inspection and referral for service to high-risk groups, instructions on DIY assessments |
| Eliminate rodent food sources | Success depends on public education effectiveness, compliance, and ability to dispose of clutter | None anticipated | Maintaining a clean home and sealing all food containers among other actions eliminate habitat for vector species | Vector-borne diseases transmitted by rodents | Inclusive public messaging campaign, flyers in accessible locations |
| Trap rodents around the home | Success depends on public education effectiveness, public compliance, and access traps | Trapping indoors without sealing the home may cause additional rodents to enter the structure | Trapping can eliminate rodents from a structure if the structure is sealed which reduces risk of transmission of vector-borne diseases | Vector-borne diseases transmitted by rodents | Inclusive public messaging campaign, flyers in accessible locations |
| Clean up after a rodent infestation | Success depends on public education effectiveness, adherence to guidance, and access to cleaning and protective equipment | Improper cleaning of rodent urine/droppings and doing so without the gloves or proper cleaning supplies can increase risk of exposure to pathogens | Thorough cleaning of an area previously infested by rodents reduces the risk of disease transmission | Vector-borne diseases transmitted by rodents | Inclusive public messaging campaign, provide free inspection and referral for service to high-risk groups, instructions on DIY cleanup |
| Keep distance from others (>3 feet) | Success depends on public education effectiveness and public compliance | Certain cultural and religious groups may be unwilling or unable to comply due to conflict with cultural/religious norms or practices | Quick and easy to implement; effective at reducing illness due to direct/indirect contact, droplet, and airborne routes | Diseases transmitted by direct contact, indirect contact, droplet, and/or airborne routes | Inclusive public messaging campaign, flyers in accessible locations |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Washington State CEMP

| Non-Pharmaceutical Intervention Option | Success Factors | Possible Drawbacks | Possible Benefits | Appropriate Use Scenario | Possible Implementation Methods |
|---|---|---|---|---|---|
| Encourage frequent environmental disinfection in personal areas | Success depends on public education effectiveness, public compliance, and access to appropriate disinfectants at home | None anticipated | Environmental disinfection is effective at reducing illness due to indirect contact (fomites) | Pathogens that are durable on dry surfaces and when significant risk for indirect contact transmission exists | Inclusive public messaging campaign, flyers in accessible locations, distribute disinfectant in accessible locations |
| Encourage frequent environmental disinfection in common and public areas | Success depends on messaging reach, organizational willingness and compliance, and access to appropriate disinfectants and workforce | None anticipated | Environmental disinfection is effective at reducing illness due to indirect contact (fomites), particularly on high-touch surfaces | Pathogens that are durable on dry surfaces and when significant risk for indirect contact transmission exists | Messaging to government agencies, major employers, transportation providers, private sector partners, CBOs, and FBOs |
| Remain home through the duration of your illness if you are sick | Success depends upon individual willingness and ability to stay home from work/school/events including access to paid sick leave | Many members of the public will be reluctant to stay home due to risk of lost wages and limited or no access to paid sick leave | This is a form of voluntary isolation which is extremely effective in reducing the spread of illness if ill persons comply consistently | Diseases transmitted by direct contact, indirect contact, droplet, and/or airborne routes | Inclusive public messaging campaign, flyers in accessible locations |
| Encourage employers to extend paid sick leave for ill employees | Success depends on messaging reach, employer willingness, and employer compliance | The decision to extend paid sick leave benefits has significant economic ramifications for employers and may threaten the viability of their business | Extending paid sick leave benefits to ill workers could be expected to facilitate compliance with requests for voluntary isolation | Diseases transmitted by direct contact, indirect contact, droplet, and/or airborne routes | Messaging to government agencies, major employers, transportation providers, private sector partners, CBOs, and FBOs |
| Encourage employers to allow ill employees to work from home if possible | Success depends on messaging reach, employer willingness, and access to technologies that facilitate telecommuting | Many industries are not conducive to "work from home" or telecommuting | Allowing ill workers to work from home could be expected to facilitate compliance with requests for voluntary isolation | Diseases transmitted by direct contact, indirect contact, droplet, and/or airborne routes | Messaging to government agencies, major employers, transportation providers, private sector partners, CBOs, and FBOs |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Washington State CEMP

**Direct Individual-Level Interventions**

The following interventions used to prevent the spread of disease when few ill persons have been identified and individual-level intervention is possible to prevent a broader outbreak. These are characterized as direct because they are implemented via a direct request or order given to a specific individual or small group and can be enforced by law, as opposed to the above Indirect NPIs which are broad-sweeping appeals for public assistance presented to the community at large without direct ordering or enforcement.

| Non-Pharmaceutical Intervention Option | Success Factors | Possible Drawbacks | Possible Benefits | Appropriate Use Scenario | Possible Implementation Methods |
|---|---|---|---|---|---|
| Voluntary isolation of sick persons | Effective education and ability to comply with request. Material support with "wrap-around" services and working with the employer may help compliance | Non-compliance with voluntary isolation increases risk of disease transmission, is difficult to enforce | Isolation is extremely effective in reducing the spread of illness consistent. Voluntary isolation is "less-restrictive" and is more acceptable to the public | Diseases transmitted by direct contact, indirect contact, droplet, and/or airborne routes | Instructing healthcare providers to educate patients, health officer request for patient to self-isolate, engage community and faith-based organizations to support |
| Involuntary isolation of sick persons | Success depends on healthcare facility and/or public health system ability to implement | Involuntary isolation is extremely restrictive and resource intensive | Isolation is extremely effective in reducing the spread of illness. Non-compliant persons can be prevented from spreading disease | Diseases transmitted by direct contact, indirect contact, droplet, and/or airborne routes. Only recommended when individual is not reliable or compliant | Health officer order for emergency detention, court order, physician order within a hospital |
| Voluntary quarantine of contacts of ill persons | Success depends on effective contact tracing and individual ability to comply with request. Material support with "wrap-around" services and working with the employer may help to encourage compliance | Non-compliance with voluntary quarantine increases risk of disease transmission | Quarantine may allow quick identification of a suspect case and helps to prevent exposures early in the course of illness | Diseases transmitted human-to-human where ill individuals may become contagious before showing symptoms. | Health officer request for contact to self-isolate, engage community and faith-based organizations to support. Work with employers. |
| Involuntary quarantine of contacts of ill persons | Success depends on effective contact tracing as well as public health system ability to implement and enforce quarantine which is costly and resource intensive | Involuntary quarantine is extremely restrictive and resource intensive | Quarantine allows quick identification of possible cases and can help to prevent exposures. Non-compliant persons can be prevented from spreading disease | Diseases transmitted human-to-human where ill individuals may become contagious before showing symptoms. Only recommended when individual is not reliable or compliant | Health officer order for emergency detention or court order. Quarantine at home, in a community-based facility, or in a government owned facility. |
| Individual travel restrictions (avoid mass transit, do not leave the county, etc.) | Success depends on effective education and individual ability to comply with request. | Some individuals will be unable or unwilling to comply with travel restrictions | Travel restriction is less restrictive than isolation or quarantine but may reduce likelihood of disease transmission by reducing interpersonal contacts | Diseases transmitted by direct contact, indirect contact, droplet, and/or airborne routes | Health officer request for individual to restrict travel, engage community and faith-based organizations to support. Work with employers. |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Washington State CEMP

| Direct Community-Level Interventions | | | | | |
|---|---|---|---|---|---|
| The following interventions may be used at the community level, particularly when individual-level interventions have failed and/or when cases are widespread and effective case identification and/or contact tracing is difficult or impossible. These interventions are among the most restrictive interventions, are difficult to implement, and each carry significant drawbacks if implemented. | | | | | |
| **Non-Pharmaceutical Intervention Option** | **Success Factors** | **Possible Drawbacks** | **Possible Benefits** | **Appropriate Use Scenario** | **Possible Implementation Methods** |
| **Ordering cancellation of major public events (festivals, public markets, etc.)** | Success depends upon event sponsor compliance and authorities' ability to enforce effectively | May result in revenue loss, public outrage, political backlash, and may disproportionately impact certain cultural or community groups | Reduces opportunities for widespread disease transmission by reducing interpersonal contacts and increasing social distance | Diseases easily transmitted human-to-human via by contact, droplet, and/or airborne routes, when less-restrictive interventions have failed | Health officer order or request that major government-sponsored events/gatherings be cancelled or postponed. |
| **Ordering cancellation of large private gatherings (i.e. movie theaters, shopping malls, religious gatherings, concerts)** | Success depends upon public and event sponsor compliance and authorities' ability to enforce effectively | May result in revenue loss, public outrage, political backlash, and may disproportionately impact certain cultural or religious groups | Reduces opportunities for widespread disease transmission by reducing interpersonal contacts and increasing social distance | Diseases easily transmitted human-to-human via by contact, droplet, and/or airborne routes, when less-restrictive interventions have failed | Health officer order or request that large private gatherings be cancelled or postponed. |
| **Ordering closure of schools and childcare facilities** | Success depends upon authorities' ability to enforce effectively and may be supported by closure of workplaces so that need for childcare is reduced | Will disproportionately impact families with young or school-age children and likely cause an increase in non-outbreak associated workplace absenteeism | Reduces opportunities for widespread disease transmission by reducing interpersonal contacts and increasing social distance among those least likely to comply with less-restrictive NPIs | Diseases easily transmitted human-to-human via by contact, droplet, and/or airborne routes, when less-restrictive interventions have failed or when children are at particular risk | Health officer order to cease operation of school(s) and childcare facility(ies). May be limited to certain at-risk age groups if applicable |
| **Ordering suspension of public transportation** | Success may be supported by closure of workplaces and supporting alternative transportation for people without private transportation | Will disproportionately impact those without access to private transportation and will cause adverse economic impact to those who must travel | Reduces opportunities for direct or indirect disease spread, and may prevent a disease from entering new geographical regions | Diseases easily transmitted human-to-human via by contact, droplet, and/or airborne routes, when less-restrictive interventions have failed or to prevent introduction in new areas | Health officer collaboration with public transportation providers to limit or cancel service as appropriate. Health officer order as needed |
| **Preventing non-emergency travel outside of the home** | Success depends upon public compliance and authorities' ability to enforce effectively | Will prevent the operation of private business, the effect of which will be felt by employees as loss of income, and the public as lack of commodity availability | Reduces opportunities for direct or indirect disease spread, and may prevent a disease from entering new geographical regions | Diseases easily transmitted human-to-human via by contact, droplet, and/or airborne routes, when less-restrictive interventions have failed or to prevent introduction in new areas | Health officer order to the public to cease all non-essential travel. Essential must be defined. Work with law enforcement agencies to enforce |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Washington State CEMP

| Non-Pharmaceutical Intervention Option | Success Factors | Possible Drawbacks | Possible Benefits | Appropriate Use Scenario | Possible Implementation Methods |
|---|---|---|---|---|---|
| **Closing ports of entry** | Success depends upon authorities' ability to enforce effectively | Will result in broad-reaching economic consequences for businesses that depend upon ports of entry for commerce. Costs may be assumed by the public in the form of increased commodity cost or lack of availability | Reduces opportunities for direct or indirect disease spread, and may prevent a disease from entering new geographical regions | Diseases easily transmitted human-to-human via by contact, droplet, and/or airborne routes, when less-restrictive interventions have failed or when there is concern for transplantation into new areas | Health officer order to close ports of entry. Requires substantial coordination with federal government and private sector |
| **Preventing access to or egress from a specific geographic area (cordon sanitaire)** | Success depends upon authorities' ability to enforce effectively | Results in the effective "cutting-off" of an entire community. People not residing in the area will be stranded without support. Commerce will be heavily compromised. | May contain a disease within the boundaries of the cordon. | Diseases easily transmitted human-to-human via by contact, droplet, and/or airborne routes, when less-restrictive interventions have failed and when a disease is largely confined to one geographical area | Health officer order to cordon a specific geographic area. Work with law enforcement agencies to enforce |

**Table 13 – Appropriate NPIs organized by Route of Transmission**

The purpose of this matrix is to provide decision support to LHOs by indicating which NPIs *may* be effective to control a communicable disease based on its route(s) of transmission. It is important to note that, despite the potential efficacy of a given intervention, each intervention may not be appropriate to implement in a given situation. The decision to implement an NPI should be made based not only upon the expected efficacy of an intervention, but also the appropriateness of the intervention in each situation and its possible consequences. This does not constitute an exhaustive list of all possible NPIs that may be effective in controlling the spread of a particular disease or condition. This document is derived from the CDC's NPI guidance (www.cdc.gov/nonpharmaceutical-interventions).

| Potential NPIs | Modes of Transmission | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Direct contact | Indirect contact (fomites) | Respiratory droplet | Airborne | Vector (Insect) | Vector (rodent) |
| Increase hand washing and use of hand sanitizer | X | X | X | X | | |
| Cover coughs and sneezes | X | X | X | X | | |
| Use masks in public when sick | | | X | X | | |
| Use EPA-registered insect repellent when outdoors | | | | | X | |
| Cover skin when outdoors | | | | | X | |
| Avoid insects when sleeping | | | | | X | |
| Seal your home to prevent rodent infestations | | | | | | X |
| Eliminate rodent food sources | | | | | | X |
| Trap rodents around the home | | | | | | X |
| Clean up after a rodent infestation | | | | | | X |
| Keep distance from others when you are sick | X | X | X | X | | |
| Encourage frequent environmental disinfection in personal areas | X | X | X | | | |
| Encourage frequent environmental disinfection in common and public areas | X | X | X | | | |
| Remain home through the duration of your illness if you are sick | X | X | X | X | | |

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

| Potential NPIs | Direct contact | Indirect contact (fomites) | Respiratory droplet | Airborne | Vector (Insect) | Vector (rodent) |
|---|---|---|---|---|---|---|
| Encourage employers to extend paid sick leave for ill employees | X | X | X | X | | |
| Encourage employers to allow ill employees to work from home if possible | X | X | X | X | | |
| Voluntary isolation of sick persons | X | X | X | X | | |
| Involuntary isolation of sick persons | X | X | X | X | | |
| Voluntary quarantine of contacts of ill persons | ? | ? | ? | ? | | |
| Involuntary quarantine of contacts of ill persons | ? | ? | ? | ? | | |
| Individual travel restrictions (avoid mass transit, do not leave the county, etc.) | X | X | X | X | | |
| Ordering cancellation of major public events | X | X | X | X | | |
| Ordering cancellation of large private gatherings | X | X | X | X | | |
| Ordering closure of schools and childcare facilities | X | X | X | X | | |
| Ordering suspension of public transportation | X | X | X | X | | |
| Ordering closure of workplaces, businesses, and public buildings | X | X | X | X | | |
| Preventing non-emergency travel outside of the home | X | X | X | X | | |
| Closing ports of entry | X | X | X | X | | |
| Preventing access to or egress from a specific geographic area (cordon sanitaire) | X | X | X | X | | |

*? – denotes situations in which an intervention may be appropriate depending on disease characteristics. Quarantine may be appropriate for diseases that are transmissible when the infected person is asymptomatic.*

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services                    Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

### Table 14 – Example NPI Decision Package Organized by Incident Severity Level – Viral Respiratory Illness

The purpose of this table is to provide an example decision package for Non-Pharmaceutical Interventions (NPIs) in the context of a communicable disease emergency caused by a viral respiratory illness such as influenza, measles, Severe Acute Respiratory Syndrome (SARS), Middle East Respiratory Syndrome (MERS), or similar illness. This document is derived from the CDC's NPI guidance (www.cdc.gov/nonpharmaceutical-interventions).

Viral respiratory illness may be transmitted via large and small respiratory droplet/aerosol, direct contact, and indirect contact (fomites). The decision to implement this package or parts thereof must be based on the characteristics of the exact pathogen, the degree of transmissibility, and the severity of illness caused by the pathogen.

| Begin at Level* | Intervention | Expected Result | Example Implementation |
|---|---|---|---|
| 5 | Increase hand washing and use of alcohol-based hand sanitizer | Reduce probability of direct and indirect transmission of the disease by disinfecting hands | Conduct public messaging and media campaigns to encourage educate the public and to promote enhanced hygiene and social distancing measures. Targeted messaging to major employers may be beneficial in encouraging these behaviors in the workplace |
| 5 | Cover coughs and sneezes | Reduce probability of droplet transmission of the disease by reducing the range of respiratory droplets and aerosols | |
| 5 | Keep distance from others (>3 feet) | Reduce probability of direct and droplet transmission by reducing the number of interpersonal contacts | |
| 5 | Frequently disinfect personal surfaces (doorknobs, phones, keyboards, etc.) | Reduce probability of indirect transmission by disinfecting fomites | |
| 5 | Remain home through the duration of your illness if you are sick | Reduce probability of transmission by preventing contacts between well and sick people | |
| 4 | Voluntary isolation of sick persons | Reduce probability of transmission by preventing contacts between well and sick people | Health officers, medical providers, and public health personnel provide direct education to cases and contacts asking that they remain home for an established period of time |
| 4 | Voluntary quarantine of contacts of sick persons | Reduce probability of transmission in the event that the contact becomes contagious before symptoms develop | |
| 3 | Involuntary isolation of sick persons | Reduce probability of transmission by preventing contacts between well and sick people | Health officers issue emergency detention orders or seek court orders for involuntary detention in order to involuntarily isolate or quarantine those who are uncooperative |
| 3 | Involuntary quarantine of contacts of sick persons | Reduce probability of transmission in the event that the contact becomes contagious before symptoms develop | |
| 2 | Order cancellation of major public events and large private gatherings | Reduce probability of transmission by reducing the number of interpersonal contacts | Health officer orders to suspend all gatherings above a certain size with the intention to reduce risk of disease transmission if a subset of that population may be sick |
| 2 | Order closure of schools, childcare facilities, workplaces, and public buildings | Reduce probability of transmission by reducing the number of interpersonal contacts | |
| 1 | Prevent non-emergency travel outside of the home | Reduce probability of transmission by reducing the number of interpersonal contacts | Health officer orders to halt non-emergency travel and remain indoors in order to protect those not yet sick and isolate those who are |
| 1 | Establish *cordon sanitaire* | Contain the disease within specific geographical boundaries | |

*Refer to Tables 1 and 8 for level definitions. Levels range from 1 to 5. In general, level 5 represents a limited outbreak and level 1 is a widespread emergency with high morbidity and mortality.*

**Table 15– Example NPI Decision Package Organized by Incident Severity Level – Contact Diseases**

The purpose of this table is to provide an example decision package for Non-Pharmaceutical Interventions (NPIs) in the context of a communicable disease emergency caused by a disease primarily transmitted by direct or indirect contact such as Methicillin-resistant Staphylococcus Aureus (MRSA), Carbapenem-resistant Enterobacteriaceae (CRE), and similar illnesses. This document is derived from the CDC's NPI guidance (www.cdc.gov/nonpharmaceutical-interventions).

Contact Diseases are transmitted when an infected person has direct bodily contact with an uninfected person and the microbe is passed from one to the other. Contact diseases can also be spread by indirect contact with an infected person's environment or personal items. The presence of wound drainage or other discharges from the body suggest an increased potential for risk of transmission and environmental contamination. Precautions that create a barrier and procedures that decrease or eliminate the microbe in the environment or on personal belongings, form the basis of interrupting transmission of direct contact diseases.

| Begin at Level* | Intervention | Expected Result | Example Implementation |
|---|---|---|---|
| 5 | Increase hand washing and use of alcohol-based hand sanitizer | Reduce probability of direct and indirect transmission of the disease by disinfecting hands | Conduct inclusive public messaging and media campaigns to encourage educate the public and to promote enhanced hygiene and social distancing measures. Targeted messaging to major employers and government agencies may be beneficial in encouraging these behaviors in the workplace |
| 5 | Keep distance from others (>3 feet) | Reduce probability of direct and droplet transmission by reducing the number of interpersonal contacts | |
| 5 | Frequently disinfect personal surfaces (doorknobs, phones, keyboards, etc.) | Reduce probability of indirect transmission by disinfecting fomites | |
| 5 | Remain home through the duration of your illness if you are sick | Reduce probability of transmission by preventing contacts between well and sick people | |
| 4 | Voluntary isolation of sick persons | Reduce probability of transmission by preventing contacts between well and sick people | Health officers, medical providers, and public health personnel provide direct education to cases asking that they remain home for an established period of time |
| 4 | Involuntary isolation of sick persons | Reduce probability of transmission by preventing contacts between well and sick people | Health officers issue emergency detention orders or seek court orders for involuntary detention in order to involuntarily isolate those who are uncooperative or unreliable |
| 3 | Order targeted cancellation of select major public events and large private gatherings | Reduce probability of transmission by reducing the number of interpersonal contacts | If a specific population is recognized to be at increased risk for transmission, consider suspending gatherings until disease transmission subsides |
| 3 | Order targeted closure of impacted schools, childcare facilities, workplaces, and/or public buildings | Reduce probability of transmission by reducing the number of interpersonal contacts | |

*Refer to Tables 1 and 8 for level definitions. Levels range from 1 to 5. In general, level 5 represents a limited outbreak and level 1 is a widespread emergency with high morbidity and mortality.*

**Table 16– Example NPI Decision Package Organized by Incident Severity Level – Fecal-Oral Diseases**

The purpose of this table is to provide an example decision package for Non-Pharmaceutical Interventions (NPIs) in the context of a communicable disease emergency caused by a disease primarily transmitted by fecal-oral transmission such as E. coli, adenovirus, campylobacter, salmonella, and similar illnesses. This document is derived from the CDC's NPI guidance (www.cdc.gov/nonpharmaceutical-interventions).

Fecal-oral transmission occurs when a person touches the stool of an infected person or an object contaminated with the stool of an infected person and ingests the germs. A disease that is spread by the fecal-oral route can be transmitted from person to person, or in food or water. This can happen when a person fails to wash their hands properly after using the bathroom, and then handles food that is eaten by others, or when feces contaminate a water supply. Hand hygiene is one of the best ways to prevent the spread of disease.

| Begin at Level* | Intervention | Expected Result | Example Implementation |
|---|---|---|---|
| 5 | Increase hand washing and use of alcohol-based hand sanitizer | Reduce probability of direct and indirect transmission of the disease by disinfecting hands | Conduct inclusive public messaging and media campaigns to encourage educate the public and to promote disease prevention measures. Targeted messaging to major employers and government agencies may be beneficial in encouraging these behaviors in the workplace |
| 5 | Frequently disinfect personal surfaces (doorknobs, phones, keyboards, etc.) | Reduce probability of indirect transmission by disinfecting fomites | |
| 5 | Remain home through the duration of your illness if you are sick, particularly for food service workers | Reduce probability of transmission by preventing contacts between well and sick people, particularly in high-risk settings | |
| 5 | Peel and wash food produce to remove potentially infectious material; store and cook all food carefully | Reduce probability of transmitting the disease through food products | |
| 5 | Order targeted closing of impacted facilities (restaurants, daycares, etc.) to inspect and perform through disinfection | Identify sources of infection and eliminate contamination | Health officers order closure of certain facilities until deemed safe |

*Refer to Tables 1 and 8 for level definitions. Levels range from 1 to 5. In general, level 5 represents a limited outbreak and level 1 is a widespread emergency with high morbidity and mortality.*

**Table 17– Example NPI Decision Package Organized by Incident Severity Level – Bloodborne Diseases**

The purpose of this table is to provide an example decision package for Non-Pharmaceutical Interventions (NPIs) in the context of a communicable disease emergency caused by a disease primarily transmitted by bloodborne transmission such as Human Immunodeficiency Virus (HIV), Hepatitis B Virus (HBV), Hepatitis C Virus (HCV), and similar illnesses. This document is derived from the CDC's NPI guidance (www.cdc.gov/nonpharmaceutical-interventions).

Bloodborne diseases can be transmitted through contact with infected blood and other potentially infectious body fluids including but not limited to semen, vaginal secretions, cerebrospinal fluid, and saliva. The best methods to prevent transmission of bloodborne pathogens are to avoid exposure to potentially infectious fluids.

| Begin at Level* | Intervention | Expected Result | Example Implementation |
|---|---|---|---|
| 5 | Abstain from sex or use barrier devices correctly and consistently when having sex | Reduce the likelihood of fluid-to-fluid contact | Conduct inclusive public messaging and media campaigns to encourage educate the public and to promote disease prevention measures. Other effective approaches may include distributing condoms and other barrier devices and conducting needle-exchange. Targeted messaging to at-risk populations may also reduce risk for those at highest risk. |
| 5 | Avoid sharing personal items such as razors, toothbrushes, etc. | Reduce the likelihood of fluid-to-fluid contact | |
| 5 | Avoid sharing needles, syringes, or other equipment used to inject drugs | Reduce the likelihood of fluid-to-fluid contact | |
| 5 | Avoid contact with blood and other body fluids | Reduce the likelihood of fluid-to-fluid contact | |
| 5 | Keep wounds covered | Reduce the likelihood of fluid-to-fluid contact | |
| 5 | Avoid getting tattoos or body piercings in unlicensed settings or with non-sterile equipment | Reduce the likelihood of fluid-to-fluid contact | |

*Refer to Tables 1 and 8 for level definitions. Levels range from 1 to 5. In general, level 5 represents a limited outbreak and level 1 is a widespread emergency with high morbidity and mortality.*

### D. Pandemic Influenza and Acute Viral Respiratory Infection (AVRI) Response Considerations

Purpose

The purpose of this attachment is to describe specific response considerations for pandemic influenza and other acute viral respiratory infection (AVRI) that are different from the core text of the *Statewide Communicable Disease and Pandemic Response Concept of Operations*. The purpose of this section is to elaborate on these differences rather than to restate the common framework for response to all communicable disease emergencies and pandemics.

Background

Pandemic influenza struck three times in the 20th century causing varying degrees of increased illness and death. Of particular note is the 1918 pandemic where more than 50 million people died around the world and 500 million people became ill causing a catastrophic social disruption.

Influenza causes upper respiratory tract infections with fever, muscle aches, headache, fatigue, dry cough and runny nose. Complications of influenza may be life-threatening and include viral and bacterial pneumonia which are more likely to occur in the very young, the elderly, and in those with certain medical conditions, including pregnancy. The virus is spread through close contact and by respiratory droplets.

According to the World Health Organization (WHO), —A pandemic influenza (or global pandemic) occurs when a new influenza virus subtype appears to which few or none are immune. In past pandemics, influenza has spread worldwide within months. Influenza is now expected to spread even more quickly due to modern global travel patterns. While it was generally assumed that there may be between one to six months warning before outbreaks begin in the United States, Washington State experienced an outbreak within days of the first confirmed cases of H1N1 in Mexico in 2009. Existing scientific evidence and historical experience indicate that:

- Pandemic influenza or other AVRI will reemerge in the future.

- New subtypes are most likely to emerge in a country other than the United States, although a novel strain could first emerge in the United States.

- An influenza or AVRI pandemic will probably occur in waves over an extended period of time. At least two waves can be expected.

- In Washington, an influenza pandemic would result in substantial impact to the population. Figure 8 below, shows the assumed impact of a pandemic, based on a range of 15–35% of the population becoming ill. Estimates in the 'moderate' column represent a range with a lower hospitalization and fatality rate as occurred in pandemic influenza outbreaks in 1957 and 1968, while estimates in the 'severe' column are based on a 1918-like pandemic with increased hospitalizations and death.

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

**Figure 8 – Potential Impact of Pandemic Influenza in Washington State**
(calculated using the CDC's FluAid 2.0 and Washington State 2003 Census)

| Severity | Moderate (1957/68-like) | | Severe (1918-like) | |
| --- | --- | --- | --- | --- |
| | United States | Washington | United States | Washington |
| Illness | 90 million | 1.9 million | 90 million | 1.9 million |
| Outpatient medical care | 23,297,882 – 54,361,724 | 479,685 – 1,119,265 | 45 million | 943,000 |
| Hospitalization | 513,617 – 1,198,443 | 10,399 – 24,255 | 9,900,000 | 210,009 |
| Will require intensive/critical care | 77,043 – 179,703 | 1,560 – 3,638 | 1,485,000 | 31,501 |
| Deaths | 116,962 – 272,911 | 2,303 – 5,373 | 1,903,000 | 40,368 |

Planning Assumptions

This attachment is based on the following assumptions in addition to the assumptions of the *Statewide Communicable Disease and Pandemic Response Concept of Operations*:

- The extent to which a pandemic will affect the general population will depend on the severity and spread of the disease.
- Each intervention used to control disease spread has the potential to disproportionately impact certain people or groups of people, and therefore implementation should be planned and conducted carefully
- Priority groups for vaccine and other medical countermeasures will be determined as the outbreak unfolds
- Although there may be isolated pockets, an influenza or AVRI pandemic will likely affect all geographic areas of the state
- An intense public reaction is likely and will require communication and public safety measures
- Support for medical surge including alternate care sites ad crisis standards of care will be needed
- Support for mass fatality management will be needed

Pandemic Influenza and AVRI Response Considerations
Response activities will be carried out in collaboration with the Washington Emergency Management Division (EMD), LHJs, Tribes, and other local, state and federal agencies and community organizations as described in the *Statewide Communicable Disease and Pandemic Response Concept of Operations*. Specific considerations for response to pandemic influenza and AVRI include:

*Surveillance and Epidemiology*

Washington's influenza surveillance system (ILI Net) monitors influenza activity in the state and will provide surveillance data needed to guide response efforts during an influenza pandemic.

*Laboratory Diagnostics*

The Washington State Public Health Laboratory (WAPHL) is capable of differentiating seasonal influenza from non-typable influenza. Non-typable influenza is tested at the CDC and all non-typable strains are evaluated to determine if they are novel or potentially a pandemic strain. The WAPHL provides protocols for the rapid identification of public health threat agents including routine testing for novel viruses and enhanced testing during a pandemic.

*Healthcare Systems Planning*

The healthcare system in Washington coordinates planning and actions by healthcare and non-healthcare emergency response partners that will be necessary for the provision of care in hospitals and other healthcare settings, including surge capacity and mortuary issues. Refer to the *Medical Surge Appendix* to the ESF 8 Annex for further information on healthcare system planning and response considerations for all-hazard medical surge.

*Vaccine Distribution and Use*

DOH, along with many LHJs, maintains plans and processes for the distribution and use of vaccines during communicable disease emergencies including an influenza or AVRI pandemic. Vaccination of at-risk individuals, healthcare workers, and the general public are effective measures to reduce transmission of disease and limit morbidity and mortality due to the disease.

Vaccine may decrease transmission of influenza and its complications. Educating the public about vaccines can increase the general public's familiarity and confidence in vaccine efficacy and safety.

- Seasonal influenza vaccine will aid to reduce illness from those strains, and may minimize the chance of avian or animal influenza combining with a human influenza virus to create a potential pandemic influenza strain.
- Among those at risk for pneumococcal disease, pneumococcal polysaccharide vaccine will reduce illness and death associated with secondary pneumococcal pneumonia that can follow influenza infection.
- If available, a vaccine effective against a pandemic influenza or AVRI strain may minimize influenza transmission, severity of illness, and mortality.
- If available, vaccine may be distributed in the early phases of a potential pandemic.

*Antiviral Drug (AVD) Distribution and Use*

Antiviral Drugs (AVDs) can serve as a medical countermeasure to save lives and provide the pharmaceutical industry time to produce an effective vaccine. Key goals for AVDs include:

- Limit mortality and morbidity due to the pandemic

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 63 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

- Minimize social disruption and economic impact resulting from the pandemic

Appropriate use and distribution of antivirals during a pandemic may reduce morbidity and mortality and diminish the overwhelming demands that will be placed on the health care system. DOH, along with many LHJs maintains plans and processes for the distribution and use of antiviral drugs during an influenza or AVRI pandemic.

### Community Disease Control and Prevention

Comprehensive community mitigation strategies for a pandemic include both pharmaceutical (vaccine and antivirals) and non- pharmaceutical interventions (NPIs). Please refer to the *NPI Policy and Implementation Playbook* for further recommendations around the use of NPIs.

### Managing Travel-Related Risk of Disease Transmission

In a world of modern air travel and a relatively short incubation period of the influenza and AVRI pathogens, disease spread will likely be rapid during a pandemic. Specific measures may be needed to manage the risk of travel-associated disease transmission. Such measures will be coordinated with the CDC DGMQ Seattle Quarantine Station including all foreign transport issues and communicable diseases entering the U.S. and Washington through major ports of entry.

### Public Information and Risk Communications

The use of proven risk communication methods is essential to inform the public during a pandemic. The overarching goal of the communications strategy is to provide timely, accurate and pertinent information to the public and other stakeholders. DOH is committed to providing reasonable accommodations to populations to assure individuals have equal access to effective communications in alignment with ADA and the Rehabilitation Act.

Key public information objectives include:

- Build and maintain public confidence in the public health and healthcare system and its ability to respond to and effectively manage an emergency.
- Provide accurate, rapid and complete information including addressing rumors and inaccuracies.
- Rapidly provide the public, health care providers, policy-makers and the media access to accurate, consistent, and comprehensive information and details about the pandemic.
- Provide accurate, consistent and highly accessible information and materials to internal staff to ensure clarity of roles and responsibilities.
- Provide accessible and culturally appropriate information for People with Limited English Proficiency (LEP), People with Access and Functional Needs (PAFN), and diverse cultural audiences.

### E.  Ebola Virus Disease (EVD) and Other Special Pathogen Disease (OSPD) Statewide Response Framework

Purpose

The purpose of this attachment is to communicate the Washington State framework for response to Ebola Virus Disease (EVD) and Other Special Pathogen Disease (OSPD) to relevant agencies, organizations, and stakeholders while expressing the unique considerations for managing pathogens that may be highly infectious and/or high consequence in nature.

This concept and corresponding frameworks are intended to be consistent with the full content of the Washington Statewide Communicable Disease Response Concept of Operations and the responsibilities established therein.

Scope

The scope of this framework is limited to EVD and OSPD within Washington State. For patients with EVD/OSP being transferred from locations outside Washington State, please refer to the *HHS Region X EVD/OSPD Regional Coordination Concept of Operations.*

A list of Special Pathogens is included in Table 16 below. This list was developed by the Centers for Disease Control and Prevention (CDC) and the United States Army Research Institute for Infectious Diseases (USAMRIID), and has been adopted by Washington State. It is important to note that the list of pathogens below is considered minimum and not an all-inclusive list of Special Pathogens

Characteristics of Special Pathogen Disease may include any one or more of the following:

- High risk of mortality
- High risk of secondary cases
- Absence of effective vaccine, prophylaxis, or specific treatment
- Clinical or public assuredness concerns that can be mitigated by treating patients in a Special Pathogens Unit (SPU)
- Optimally safe clinical care requires the use of Personal Protective Equipment (PPE) beyond what is in daily use
- Optimally safe clinical care requires facilities or facility functionality that is different from standard hospital facilities
- Waste and laboratory samples generated in the course of clinical management requires special handling (DOT Category A or similar)

**Table 16 – Special Pathogens**

| Arenaviruses | Bunyaviruses | Henipiviruses | Other pathogens: |
|---|---|---|---|
| • Lassa | • CCHF | • Hendra | • Hantaan |
| • Guanarito | **Orthopoxviruses** | • Nipah | • Novel influenza |
| • Junin | • Variola | **Filoviruses** | • Pneumonic Plague |
| • Machupo | • Monkeypox | • Ebola | • XDR Tuberculosis |
| • Sabia | **Coronaviruses** | • Marburg | • Rift Valley Fever |
| • Lujo Virus | • SARS | | |
| | • MERS | | |

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 65 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

Assumptions

This framework is based on the following planning assumptions:

- All healthcare facilities in Washington State maintain the capability to identify and isolate patients with significant index of suspicion for EVD/OSPD and notify the relevant LHJ.
- All LHJs and Tribal Governments in Washington State have access to the capability to respond to a suspected case of EVD/OSPD in a private residence or a healthcare facility in their jurisdiction including performing Active Monitoring and Direct Active Monitoring (AM/DAM) of individuals at risk for developing EVD/OSPD
- All LHJs and Tribal Governments have access to the capability to arrange transportation for a patient with suspected EVD/OSPD to an appropriate hospital

Activation of this Framework

The decision to activate this framework statewide in response to a special pathogen is made by the Secretary of Health and is guided by CDC recommendations regarding the specific pathogen of concern.

All physicians in Washington are expected to activate this framework for a specific patient suspected to have EVD/OSPD, based on concerning clinical findings and exposure risk (e.g., history of recent travel to an area affected by an outbreak of such a pathogen). In response to a single patient with suspected or confirmed EVD/OSPD, medical providers must notify the appropriate Local Health Jurisdiction (LHJ) who must in turn notify DOH. This is the day-to-day process for notifiable conditions and will remain the process for activating this framework for single patients.

Framework

**Public Health Responsibilities**

When this framework is activated, LHJs and Tribal Health Jurisdictions are expected to fulfill their responsibilities as described in the Washington Statewide Communicable Disease and Pandemic Response Concept of Operations including notifications, epidemiological investigation, and monitoring of those at-risk for developing illness.

When processes are in place to identify returning travelers with some level of risk for EVD/OSPD at airports or other points of entry, each LHJ is expected to arrange for AM/DAM as appropriate for each returning traveler with the intent of identifying a suspected case of EVD/OSPD at the earliest possible opportunity.

**Essential Elements of Information**

The below Essential Elements of Information (EEI) are examples of critical considerations that must be communicated among and within jurisdictions under this framework. Many of the below elements of information constitute confidential, protected data and must be managed as such.

- When returning travelers are being monitored, the identities and locations of all people identified as having any level of risk for exposure to EVD/OSP must be shared with the LHJ in the patient's area of (temporary or permanent) residence
- The location and identity of any people suspected or confirmed to have EVD/OSP

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 66 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

- The death of any person suspected or confirmed to have EVD/OSP
- Incidents where first responders, healthcare workers, or members of the public have known or suspected exposure to a person suspected or confirmed to have EVD/OSP
- Travel routes and plans for cross-jurisdictional movement of a patient with suspected or confirmed EVD/OSP
- Any equipment, supply, or medication shortages or needs that may compromise response at any time

**Healthcare System Responsibilities and Tiered Hospital Network**

As a result of the 2014 Ebola Virus Disease (EVD) Epidemic, a tiered hospital system was developed nationwide and in Washington State to assure availability of safe and effective medical care for high-risk patients. The resulting system allows preparedness and response efforts to be focused around a relatively small number of facilities, which have built and continue to build enhanced capability to manage patients with EVD/OSPD.

This tiered system is activated as a cornerstone of effective public health and healthcare system response to EVD/OSPD. Activation of this system assures that each patient receives medical care from those who are *most* prepared to provide it and have strong, proven capability to do so. Responder health and safety is paramount in any incident, and use of the tiered hospital network assures the greatest degree of protection for clinical providers.

All hospitals regardless of tier must collaborate closely with the appropriate LHJ on an ongoing basis in preparedness, response, and recovery activities.

The tiered hospital network includes the following capabilities in Washington State:

- *Frontline Hospitals* – There are 87 frontline hospitals in Washington State, and each is expected to have the capability to:
  o Identify a patient with concern for EVD/OSPD,
  o Isolate that patient to prevent unprotected exposure to healthcare workers and other patients
  o Inform the appropriate LHJ and, if transferring the patient, inform the EMS agency of the patients infectious status
  o Arrange for safe transfer of the patient to an Assessment or Treatment facility
  o Have sufficient supplies of PPE on hand to manage an EVD/OSPD patient for at least 24 hours if needed

- *Assessment Hospitals* – There are 6 state-designated Assessment Hospitals in Washington that stand ready to:
  o Receive a patient who is suspected to have EVD/OSPD
  o Interface with EMS personnel to assure safe waste disposal and doffing of EMS personnel PPE
  o Isolate the patient in a private room
  o Obtain laboratory samples as needed to confirm the diagnosis as advised by the LHJ and DOH, and send samples to the WA PHL in coordination with the LHJ and DOH
  o Care for the patient until the diagnosis can be confirmed or ruled out and until discharge or safe transfer of the patient (up to 96 hours)

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 67 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

- o   In consultation with the LHJ and DOH, arrange patient transfer to a designated Treatment Center
- o   Have sufficient supplies of PPE on hand to manage an EVD/OSPD patient for at least 96 hours
- o   Safely manage DOT Category A hazardous waste

- *Treatment Centers* – There are 2 state-designated Treatment Centers in Washington that maintain the capability to:
  - o   Receive a patient who is suspected or confirmed to have EVD/OSPD within 8 hours of notification
  - o   Carry out all capabilities of an Assessment Hospital
  - o   Provide comprehensive care for the patient through the full duration of their illness
  - o   Arrange safe discharge and appropriate follow up care

- *Regional Treatment Centers* – There are 10 federally designated Regional Treatment Centers in the United States including 1 located in Washington State. Each RTC maintains the same capability as state-designated Treatment Centers and:
  - o   The capability to manage at least 2 EVD/OSPD patients concurrently
  - o   The capability to provide or arrange pediatric care
  - o   At least 10 negative-pressure isolation rooms

**Table 17 – Assessment Hospitals and Treatment Centers in Washington State**

| Category | Hospitals (in alphabetical order) | Location |
|---|---|---|
| Assessment Hospitals | Evergreen Health | Kirkland, WA |
| | Harrison Medical Center | Bremerton, WA |
| | PeaceHealth St. Joseph | Bellingham, WA |
| | Providence Regional Medical Center Everett | Everett, WA |
| | Providence St. Mary Medical Center | Walla Walla, WA |
| | Swedish Hospital Issaquah | Issaquah, WA |
| Treatment Centers | Harborview Medical Center (adult and pediatric) | Seattle, WA |
| | Seattle Children's Hospital (pediatric only) | Seattle, WA |
| Regional Treatment Center | Providence Sacred Heart Medical Center and Children's Hospital (adult and pediatric) | Spokane, WA |

Each facility regardless of tier is expected to maintain plans and procedures, train their staff, and validate plans through exercise to assure that the necessary capability is sustained across the state.

## Emergency Medical Services (EMS)

All licensed Emergency Medical Services (EMS) agencies and other first responder agencies are expected to identify patients with concerning clinical findings and potential exposure history in the prehospital environment, and to communicate this information to the receiving hospital prior to arrival.

EMS personnel are trained in basic infection control and highly infectious diseases through initial and ongoing training required to maintain certification, and are adequately equipped with appropriate PPE to protect them from most communicable diseases including patients with viral respiratory illness and those with "dry" EVD signs and symptoms. County EMS Medical Program Directors (MPDs) have received guidance from DOH and have established protocol for the appropriate clinical management of a patient with EVD/OSPD.

### EMS Interfacility Transfer (IFT) Agencies

Interfacility transfer of a patient with EVD/OSPD carries many unique considerations. In patients with EVD, the severity of clinical condition directly correlates to viral load in the patient's bloodstream; thus, the more critically ill a patient is, the more contagious the patient becomes. As a result, additional protective measures are needed to protect EMS and other personnel from exposure to the disease when conducting interfacility transfer.

DOH maintains a list of identified EMS agencies that maintain the capability to conduct interfacility transfer of EVD patients with "wet" signs and symptoms, and those with OSPD. Those agencies are listed in Table 18 below. Other agencies who have developed capability but are not included on this list may transport EVD/OSPD patients for interfacility transfer at the judgment of the agency, hospital, and LHJ.

**Table 18 – WA Designated EVD/OSPD Interfacility Transfer Agencies**

| EMS Agency (alphabetical order) | Location | Areas Served |
|---|---|---|
| Advanced Life Systems, Inc. | Yakima, WA | Yakima County, Confederated Tribes of the Yakima Nation |
| American Medical Response | Portland, OR | Grays Harbor, Lewis, Mason, Thurston Counties; Quinault Tribe |
| American Medical Response | Spokane, WA | Adams, Asotin, Columbia, Ferry, Garfield, Lincoln, Pend Oreille, Spokane, Stevens, Whitman, Chelan, Douglas, Grant, Okanagan Counties, Confederated Tribes of the Colville Reservation, Kalispell Tribe, Spokane Tribe |
| American Medical Response | Vancouver, WA | Clark, Cowlitz, Skamania, Klickitat Counties |
| American Medical Response | Yakima, WA | Benton, Franklin, Kittitas, Walla Walla, Yakima Counties; Confederated Tribes of the Yakima Nation |
| Central Kitsap Fire and Rescue | Bremerton, WA | Kitsap County |
| King County Medic One | Kent, WA | King County |
| Lake Chelan Community Hospital EMS | Chelan, WA | Chelan County |
| Metro West Ambulance | Hillsboro, OR | Pacific County, Wahkiakum County |
| Rural Metro Ambulance | Fife, WA | Clallam, Jefferson, Pierce, Skagit, Snohomish, Whatcom Counties; Makah Tribe |
| San Juan County EMS | Friday Harbor, WA | San Juan County |
| Whidbey General Hospital EMS | Coupeville, WA | Island County |

### Framework Activation Diagram

The following diagram describes the general processes for management of a patient with suspected EVD/OSPD beginning at the time of symptom development.

**Figure 5 – EVD/OSPD Framework Activation Graphic**



**Patient Movement Considerations**

Moving a patient with suspected EVD/OSPD is challenging due to the need for enhanced PPE for all providers involved, and the degree of preparation necessary to carry out the mission safely. Each EMS agency has slightly different operational procedures however most share several common characteristics:

- Removing some or all of the equipment and supplies from the patient compartment of the ambulance
- Donning Level A, B, or C hazardous Materials (HAZMAT) Personal Protective Equipment (PPE), including the use of Powered Air Purifying Respirators (PAPRs) and some with Self-Contained Breathing Apparatus (SCBA)
- Placing some type of protective barrier on the inside of the ambulance to aid in decontamination

These actions, among others, are important to protect the health and safety of EMS personnel involved in this transfer. Unfortunately, EMS providers can only wear high levels of PPE for a limited amount of time, so ground transports must be limited in distance or involve multiple teams. Furthermore, some EMS agencies and hospitals have collaborated in planning to use "proceed out" teams of hospital staff to provide care for the patient during transport. Alternative solutions like this are permissible under this framework, but will require additional policy, procedure, training, and exercise in order to implement effectively. It is encouraged that written agreements be developed for cases like this to specifically delineate respective roles and responsibilities of each agency involved.

Similar complexities exist in conducting air transport for patients with EVD/OSPD. It is difficult to sufficiently protect providers from exposure to the disease in a rotor-wing aircraft (helicopter), so helicopter transport of such patients is likely not possible. It is also difficult to isolate the patient while on board a fixed-wind medical aircraft (except those specifically designed for isolation) due to the close quarters. If air transportation of a patient with suspected or confirmed EVD/OSPD is necessary and a Washington State licensed Air Ambulance service is unable to safely transport the patient, the federally-contracted air ambulance service for EVD/OSPD will be requested.

The modes and methods of transportation for each individual case will be different, and all will require a significant amount of time to plan, prepare for, and execute. One approach for a long-distance ground transport may be to activate several EMS agencies and exchange personnel (and possibly vehicles) at pre-identified intervals along the transport route, which is logistically demanding. All movement of a suspected or confirmed EVD/OSPD patient requires significant coordination to assure that the transfer is safe for the patient, EMS personnel, and the public. The framework for tactical planning for patient movement is shown in Figure 5.

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

## Figure 6 – Tactical Planning Process for EVD/OSPD Patient Movement

Patient at a Frontline or Assessment Hospital (Facility of Patient Origin or FPO) in the County of Patient Origin (CPO) and transfer to a treatment center is needed:
- Provider at FPO notifies LHJ in CPO of a potential/ actual notifiable condition with concern for EVD/OSP
- LHJ in CPO notifies WA DOH CDEpi on call and DOH Duty Officer

LHJ in CPO works with FPO to identify receiving Treatment Center (or Assessment Hospital if transit time to Treatment Center is too long)

LHJ in CPO notifies LHJ in Receiving Treatment Center jurisdiction

If patient transfer requires crossing other jurisdictions, LHJ in CPO notifies LHJ in each

FPO contacts receiving Treatment Center and requests transfer

Receiving Treatment Center accepts patient if able

DOH provides support and coordination as requested and works to anticipate and provide for future needs

FPO requests EMS agency to perform transfer

Patient is accepted

DOH notifies CDC if necessary

FPO, Receiving Treatment Center, and EMS agency(ies) join on a clinical conference call

FPO, Receiving Treatment Center, all impacted LHJs, DOH, EMS agency(ies), and Washington State Patrol (WSP) met on a logistical conference call

Next Steps:
☐ Monitor transport and develop contingency plans
☐ Manage media/public information concerns
☐ WA DOH obtain resources as needed and respond to resource requests

- Provider at FPO
- Clinical provider from each EMS agency
- Receiving Treatment Center clinicians
- Ground transport medical providers

- FPO emergency manager/incident commander
- Representatives from all affected LHJs
- Receiving Treatment Center emergency manager/incident commander
- Washington State Patrol (WSP) representative
- Operations representatives from each EMS agency
- Others as needed

Outcome of Clinical Call:
☐ Safe for Patient to Travel
☐ Confirm clinical acceptance by Receiving Treatment Center
☐ Any additional resource needs (e.g. for critical care transport, air transport, etc).

Legend:
All 3 process occur simultaneously. Process in purple indicates DOH role, Green indicates LHJ(s) activities, and blue indicates hospital(s) activities.

Outcome of Logistical Call:
☐ Establish patient movement plan and timeline
☐ Identify logistical needs and assign responsibilities

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

### Care of Service Animals and Pets

Some animal species may be susceptible to EVD/OSPD such that, if an animal is exposed to a human case, the animal may contract and/or transmit the disease. Each pathogen will be different in regards to the animal species (if any) that are susceptible to the illness. Whenever an animal was or may have been exposed to EVD/OSPD, it is important that public health and veterinary officials evaluate each case with regard to the level of risk posed by the potential exposure, the pathogen, and the animal species, and intervene based on the existing scientific evidence and their best professional judgment. This applies to all non-human animals that may have been exposed to EVD/OSPD.

The process depicted in Figure 6 below was developed to support LHJs in identifying animals in the home of PUIs and deliver appropriate recommendations based on the level of risk.

For further guidance on the management of a service animal, pet, or other animal please reference the American Veterinary Medical Association (AVMA) recommendations.

**Figure 7 – Decision Tree: Management of Animals belonging to a PUI for EVD/OSPD**



The process depicted in Figure 7 below was developed to guide assessment of exposure risk in animals with potential exposure to EVD. A similar risk assessment process will guide decision making for any potential animal exposure to EVD/OSPD.

**Figure 8 – Animal Risk Assessment Algorithm for EVD Exposure**

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 74 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

**Laboratory Testing**

Laboratory testing and shipping of specimens that are suspected or confirmed to contain EVD/OSP require significant planning. It is important to note that guidelines and regulatory requirements may differ by pathogen type, but most if not all pathogens listed above as OSP will require packaging and shipping as DOT Category A material.

DOT Category A regulations do not apply to federal, state, or local government employees transporting materials for noncommercial purposes. Therefore, if packaged appropriately according to Category A regulations, a sample may be transported to WAPHL by any government official.

For more specific guidance on laboratory sample submission to WAPHL please see: http://www.doh.wa.gov/Portals/1/Documents/5100/420-130-Ebola-PHL-Testing.pdf.

**Solid Waste Management**

Waste produced by a person with EVD must be treated as Category A hazardous waste. OSP depending on their modes of transmission may not pose such a significant hazard. However, waste management remains an important consideration, and jurisdictions must adhere to relevant laws and regulations including CDC guidance for waste management for each specific pathogen. Please reference CDC guidance for solid waste management: http://www.cdc.gov/vhf/ebola/healthcare-us/cleaning/waste-management.html

**Wastewater Management**

Unique precautions must be taken for wastewater that may contain material contaminated with EVD/OSP. Precautions must follow the CDC recommendations for the specific pathogen of concern.

Please see:

http://www.doh.wa.gov/ForPublicHealthandHealthcareProviders/EmergencyPreparedness/IsolationandQuarantine
http://www.cdc.gov/vhf/ebola/prevention/handling-sewage.html

**Mortuary Affairs and Human Remains Management**

Human remains contaminated with EVD/OSP must be managed according to the most up-to-date CDC guidance for the pathogen of concern. It is the responsibility of each Assessment Hospital and Treatment Center to coordinate with funeral homes in their area to plan for the management of human remains contaminated with EVD/OSP. LHJs should maintain plans to support and coordinate management of human remains as needed, and should know which funeral homes in each jurisdiction have the capability to safely manage such remains.

Human remains contaminated with EVD/OSP are exempt from the U.S. Department of Transportation (DOT) Hazardous Materials Regulations (HMR; 49 CFR, Parts 171-180) regulating transportation of hazardous waste. Transportation of such remains must be coordinated through the LHJ of all jurisdictions affected by the transportation.

It is recommended that tribal governments and LHJs maintain plans to support the sociocultural aspects of fatality management and family assistance, and coordinate management of human remains accordingly.

## F.  Health and Human Services (HHS) Region X Ebola and Other Special Pathogens Regional Coordination Concept of Operations

*(Signature page is retained under separate cover)*

### G. Bioterrorism Response Considerations

Purpose

The purpose of this attachment is to describe specific response considerations for bioterrorism incidents that are different from the core text of the *Statewide Communicable Disease and Pandemic Response Concept of Operations*. The purpose of this section is to elaborate on these differences rather than to restate the common framework for response to all communicable disease emergencies and pandemics.

Background

Bioterrorism is defined as the intentional or threatened use of viruses, bacteria, fungi, or biotoxins to produce death or disease in humans, animals, or plants. In the wake of bioterrorism incidents including intentional distribution of Salmonella in Oregon (1984) and the Anthrax mailings in 2001, bioterrorism remains a nationwide preparedness scenario.

We cannot know how likely it is that biological weapons will be used, however, we do know that the technology to produce and use dangerous biological agents is potentially available to people who might be willing to use them. Because the consequences of such an attack could be severe, response must be as quick and effective as possible

Recognition of a Bioterrorism Incident

Indicators of a potential bioterrorism incident may include:

- Unusual disease transmission or presentation in humans
    - Unusual season or geography
    - Incidence above baseline
    - "Atypical cases" including rare clinical forms of disease, abnormal age groups affected, high mortality, affects previously healthy or those with low risk factors for infection
    - Unusual antimicrobial resistance pattern
    - Simultaneous clusters of illness in non-contiguous areas
- Animal indicators
    - Simultaneous human and animal illness
    - Large numbers of unexplained illnesses or deaths
    - Incidence above baseline
    - Unusual clinical presentation
    - Unusual season or geography
    - High mortality

It is important to note that animal illness may precede human illness in a bioterrorism incident.

Bioterrorism Response Considerations

Public health and healthcare system response to a bioterrorism incident is not substantially different from response to a non-intentional communicable disease

emergency. It is important to note than many potential bioterror agents are considered Special Pathogens, and medical response to these will proceed pursuant to the *Statewide EVD/OSP Response Framework*. The unique considerations for public health and healthcare response to bioterrorism are as follows:

*Detection*

- Bioterrorism may be covert or overt. In a covert bioterrorism incident, unusual illness may be the first sign that an attack has occurred.
- Early detection is important during all communicable disease emergencies, but is particularly critical during a potential bioterrorism incident. Early identification of such an incident may allow public health officials to contain or limit the spread of disease beyond those already exposed. Early chemoprophylaxis of those potentially exposed can prevent or reduce the severity of illness due to a number of potential bioterror agents.
- The BioWatch system is a federal government program designed to detect certain pathogens in the air. Sensors are located in select sites in major cities throughout the United States and in Washington State. BioWatch may provide early notification of a potential bioterrorism incident, and combined with other surveillance data may prompt public health response.

*Investigation and Response*

- Bioterrorism is a criminal activity and as a result, public health and medical response and epidemiological investigation during such an incident will be conducted in close collaboration with local, state, and federal law enforcement officials.
- The Federal Bureau of Investigation (FBI) is the lead federal law enforcement agency charged with counterterrorism investigations. The FBI maintains numerous Joint Terrorism Task Forces (JTTFs), each of which includes representatives from multiple federal, state, and local law enforcement officials. JTTFs have significant responsibility for intelligence gathering and are a valuable partner for public health in investigating a bioterrorism incident.
- Any area, building, or property impacted by a bioterrorism incident is a crime scene and must be secured appropriately.
- The CDC is a key partner when responding to a bioterrorism incident and, by request, will provide resources to support investigation, laboratory testing, and disease control interventions.
- The Washington State Army National Guard (WAARNG) maintains a Homeland Response Force (HRF) including a Civil Support Team (CST) and numerous other resources that may be made available by the Governor to support investigation and response during a bioterrorism incident. HRF units can provide resources and personnel to provide triage, medical stabilization, and decontamination. CSTs maintain mobile laboratory capabilities to characterize threat agents, among other capabilities.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 78 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

- The Washington State Fusion Center (WSFC) supports homeland security and public safety missions of state, local, tribal, and private sector entities. Its objectives are to detect, deter, and prevent terrorist activities through intelligence collection and threat assessment. In the event of a bioterrorism incident, WSFC will be a critical forum for information sharing to support response.
- External decontamination may be warranted if gross contamination is present on those exposed to a suspected or known bioterrorism agent. If gross contamination is not present, external decontamination is not likely to be beneficial.
- Many biological agents persist in the environment for only a short time and are highly sensitive to heat and light. Once the agent is identified, the need for environmental decontamination will become apparent. Environmental decontamination is most appropriate for sporeforming agents such as anthrax, which persist in the environment for longer periods of time. However, some level of decontamination or disinfection, even if not strictly necessary, may help to ease public concern.

*Public Information and Risk Communications*

- Bioterrorism incidents tend to produce a greater degree of fear among the general public than an equivalent non-intentional communicable disease emergency. For this reason, it is of the utmost importance that accurate, timely, and comprehensive and inclusive public information is provided on an ongoing basis and in a well-coordinated manner.
- During a bioterrorism incident, it is likely that the healthcare system will be overwhelmed not only by those who may be ill or may have been exposed, but also those "worried well" or citizens who believe themselves to be at risk. Effective risk communication can mitigate this impact to the healthcare system.

*Laboratory Testing*

- All environmental samples, human samples, and other materials obtained through epidemiological investigation are considered evidence in the context of a bioterrorism incident and must be handled as such. This includes maintaining chain of custody documentation for each sample.
- The Washington State Public Health Laboratory (WAPHL) is part of the Laboratory Response Network (LRN) along with state laboratories in every other state and numerous other laboratories. The LRN facilitates nationwide sample collection, transport, testing, surge capacity, and training to identify critical biological agents.
- Laboratory testing for some high-risk pathogens must be conducted only at the few Biosafety Level (BSL) 4 laboratories in the United States. The CDC and FBI will cooperate with state officials to arrange sample collection and shipping to appropriate CDC and Department of Defense (DoD) laboratories.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 79 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services        Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

### H. Zoonotic Disease (ZD) and Vector-Borne Disease (VBD) Response Concept of Operations

Background

Zoonotic and vector-borne diseases are those transmittable from animals to people, sometimes through a disease vector such as a mosquito. Zoonotic and vector-borne diseases can affect both animals and people, and public health actions in partnership with veterinary services are usually warranted. Even in outbreaks of animal diseases that are not transmissible to humans, there may be the need for public health activities to identify possible human health risk.

New infectious diseases continue to emerge around the world. According to the CDC, of the 1,415 pathogens currently known to cause disease in humans, 868 (61%) are zoonotic in origin. Of the 175 pathogens defined as emerging infections, 131 (75%) are zoonotic in origin. Many zoonotic and vector-borne diseases cause serious and sometimes life threatening illness.

Many zoonotic and vector-borne pathogens are already endemic in Washington, and some have the potential to periodically surface and cause large-scale outbreaks of human and/or animal disease. A significant outbreak of a zoonotic and vector-borne disease may result in substantial morbidity and mortality for humans and other animals, and may exhaust local and regional health and veterinary resources and other supporting services.

DOH is the lead state agency coordinating and integrating state efforts that provide public health assistance during zoonotic and vector-borne disease incidents.

Assumptions

The assumptions underlying these considerations for ZD and VBD response include:

- Local health jurisdictions have authority over the investigation and control of disease outbreaks in their jurisdictions and may request DOH assistance at their discretion.
- Zoonotic and vector-borne disease outbreaks may occur without warning. Lag times exist between exposure, diagnosis, and reporting. This lag time provides opportunity for a disease to spread to a substantial number of individuals or animals before preventive actions can be taken.
- Intentional incidents fall under the jurisdiction of law enforcement authorities. Zoonotic and vector-borne disease outbreak investigations occurring under these circumstances will require collaboration between public health and law enforcement agencies. Additional organizations including WSDA, WDFW, and/or USDA may participate in response and investigation as needed.
- LHJs may not have a ZD/VBD emergency response plan. As with routine investigations, DOH will provide technical and material assistance as requested.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 80 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

<u>Specific Authorities for ZD and VBD Response</u>

The authority and responsibility for responding to an emergency rests with the LHJ impacted by the emergency (RCW 38.52). DOH will play a supportive or lead role as requested, coordinating with affected LHJs and other local, state, and federal agencies in the incident of a zoonotic or vector-borne disease incident that overwhelms local resources.

In accordance with Chapter 246-101 WAC, DOH will monitor, detect and report on the occurrence of human cases of zoonotic and vector-borne diseases of public health significance among Washington residents.

In accordance with WAC 246-101-405 Responsibilities of Veterinarians, veterinarians notify the state veterinarian at WSDA of notifiable conditions listed in Table V-1 of WAC 246-101-405. Per interagency agreement, WSDA then notifies the DOH Public Health Veterinarian who subsequently notifies the Zoonotic and vector-borne disease Epidemiologist or other available epidemiologist at DOH. If reporting veterinarians suspect that the animal may be associated with a human case or exposure, the veterinarian notifies the local health officer (per WAC 246-101-405).

<u>Zoonotic Disease (ZD) and Vector Borne Disease (VBD) Response Considerations</u>

In addition to the activities described in the *Statewide Communicable Disease and Pandemic Response Concept of Operations,* the following considerations must be made for ZD and VBD. The public health activities that DOH will lead in response to ZD/VBD outbreaks include:

*Investigation and Surveillance*

- Assessing the risk of human infection and illness among persons potentially exposed to a zoonotic and vector-borne disease pathogen, advising on disease control, as well as leading or supporting (depending on circumstances) the epidemiological investigations of human cases
- Conducting surveillance and investigations related to human infections including the collection of biological samples for pathogen analysis
- Collecting and analyzing environmental samples including soil, air, water, or other potential media pathways of exposure to humans

*Technical and Resource Assistance*

- Providing Washington State Departments of Agriculture (WSDA), Fish and Wildlife (WDFW), and other agencies with recommendations and guidance on the use of proper personal protection equipment (PPE) and other safety measures for personnel involved in responding to an outbreak.
- In consultation with WSDA Animal Health Staff, provide recommendations for animal prophylaxis, infection control in veterinary care centers, isolation, and quarantine of animals during zoonotic and vector-borne disease emergencies.

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

- Providing guidance to other state, tribal, and local public health agencies regarding the diagnosis and management of potential human infections and illnesses caused by zoonotic and vector-borne disease pathogens
- Provide zoonotic and vector-borne disease reservoir and vector control recommendations and resources to local health jurisdictions to support zoonotic and vector-borne disease investigation activities.

*Coordination and Information Sharing*

- Performing the primary and coordination roles in ESF 8 and support role in ESF 11
- Collaborating with other agencies to address public health concerns related to multi-jurisdictional investigations of animal cases of zoonotic and vector-borne disease within the state and those that extend beyond state boundaries.
- Providing updates on human and environmental surveillance/outbreak data to LHJs, DOH, other state, and federal agencies as needed.

Cases of animal disease are reportable to WSDA per RCW 16.70 Control of Pet Animals Infected with Diseases Communicable to Humans, and should be shared with DOH per an informal agreement.

<u>Agency Responsibilities in ZD/VBD Response</u>

Agencies involved in response to a zoonotic and vector-borne disease incident will vary depending on the circumstances, and may include any or all of the following. Each agency is listed below along with its possible roles and responsibilities:

*Mosquito Control Districts*

RCW 17.28 provides for the creation of mosquito control districts, and provides the districts with the power to exterminate mosquitos, a method of financing mosquito control, and the power to abate breeding places for mosquitos as needed to protect public health.

RCW 70.22 establishes a statewide program for the control or elimination of mosquitoes as a health hazard. The Secretary of Health coordinates plans for mosquito control work which may be projected by any county, city or town, municipal corporation, taxing district, state department or agency, federal government agency, or any person, group or organization, and arranges for cooperation between any such districts, departments, agencies, persons, groups or organizations.

Eighteen mosquito control districts exist in Washington State and each has the authority to conduct mosquito trapping, testing, extermination, and abatement within its jurisdiction.

*Washington State Department of Agriculture*

- Lead animal disease surveillance efforts and share information associated with potential human exposure to communicable disease
- Assign appropriate staff to affected area or region, local and state EOCs, or field offices as needed.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 82 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

- If testing of agricultural animals is necessary, may need to assign field staff to participate in collecting specimens and working with producers.
- Lead herd depopulation actions if the need for this is determined. When local jurisdiction(s) identify a need for assistance with the disposal of a large number of animal carcasses, this effort will involve representatives from the Department of Ecology, WSDA, and DOH, to develop and implement a method to dispose of animal remains connected to the incident.

*Washington State Department of Ecology*

- In consultation with DOH and WSDA, support LHJs with issues pertaining to the disposal of solid waste. This would include potentially contaminated animal carcasses and feed products.

*Washington State Department of Fish and Wildlife*

- Assign appropriate staff to affected area or region, local and state EOCs, or field offices as needed.
- Implement wildlife control efforts as appropriate.
- Coordinate with USDA wildlife services, WSDA, and DOH.

*Washington Animal Disease Diagnostic Laboratory (WADDL)*

WADDL serves as the State Animal Health Laboratory for testing of animal samples, including for zoonotic pathogens. WADDL also tests environmental samples from production facilities, and food matrices as part of the Hazard Analysis Critical Control Point (HACCP) programs for food producers and processers.

Through contract with DOH, WADDL provides surveillance and outbreak testing through active surveillance programs and is a reference laboratory for animal and low risk environmental samples in the Laboratory Response Network (LRN) for bioterrorism.

WADDL is a core reference laboratory in the National Animal Health Laboratory Network and regularly provides surveillance and potential outbreak testing for foreign animal diseases, including zoonotic pathogens such as highly pathogenic avian influenza, that could impact public health, whether zoonotic or not.

WADDL is a member of the Veterinary Laboratory Investigation and Response Network (Vet-LIRN), a network of animal health laboratories that conduct surveillance and perform targeted testing of animal samples, foods and feeds for the Food and Drug Administration.

The primary duties of WADDL during a zoonotic and vector-borne disease outbreak include:

- Providing appropriate laboratory testing for zoonotic and vector-borne disease agents for animal case specimens. Facilitate submission specimens to other laboratories for diagnostic and confirmatory testing if not available at WADDL.
- Providing technical consultation to the LHJs and clinical laboratories, DOH, and external partners regarding specimen submission.

*United States Department of Agriculture (USDA)*

USDA Animal and Plant Health Inspection Service (APHIS) Wildlife Services maintains authority over and provides federal leadership and expertise to resolve wildlife conflicts including disease outbreaks that may affect human and domestic animal populations.

USDA-APHIS Veterinary Services: Contributes expertise, infrastructure, networks, and systems to operate effectively with multiple partners (local, state, national and international) across disciplines to collaboratively promote healthy animals, people, ecosystems, and society. USDA provides federal leadership and expertise in the prevention, control and/or elimination of diseases of US livestock and poultry; and in animal health emergency response coordination.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 84 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

## I.  Relevant Legal Authorities

Key state authorities that govern response to communicable disease are described in the ESF 8 Annex to the State Comprehensive Emergency Management Plan (CEMP) and are discussed in specific detail here. For the full text of each authority, visit: https://apps.leg.wa.gov.

**Revised Code of Washington (RCW) Chapters and Sections**

RCW 43.70.020(3) – State Department of Health (excerpted)

"(3) The department shall provide leadership and coordination in identifying and resolving threats to the public health by:

    (a) Working with local health departments and local governments to strengthen the state and local governmental partnership in providing public protection;

    (b) Developing intervention strategies;

    (c) Providing expert advice to the executive and legislative branches of state government;

    (d) Providing active and fair enforcement of rules;

    (e) Working with other federal, state, and local agencies and facilitating their involvement in planning and implementing health preservation measures;

    (f) Providing information to the public; and

    (g) Carrying out such other related actions as may be appropriate to this purpose"

RCW 43.70.130 – Powers and duties of the Secretary of Health (excerpted)

"The secretary of health shall:

    (1) Exercise all the powers and perform all the duties prescribed by law with respect to public health and vital statistics;

    (2) Investigate and study factors relating to the preservation, promotion, and improvement of the health of the people, the causes of morbidity and mortality, and the effects of the environment and other conditions upon the public health. . .

    (3) Strictly enforce all laws for the protection of the public health and the improvement of sanitary conditions in the state, and all rules, regulations, and orders of the state board of health;

    (4) Enforce the public health laws of the state and the rules and regulations promulgated by the department or the board of health in local matters, when in its opinion an emergency exists and the local board of health has failed to act with sufficient promptness or efficiency, or is unable for reasons beyond its control to act, or when no local board has been established. . .

    (5) Investigate outbreaks and epidemics of disease that may occur and advise local health officers as to measures to be taken to prevent and control the same;

    (6) Exercise general supervision over the work of all local health departments and establish uniform reporting systems by local health officers to the state department of health;

(7) Have the same authority as local health officers, except that the secretary shall not exercise such authority unless the local health officer fails or is unable to do so, or when in an emergency the safety of the public health demands it, or by agreement with the local health officer or local board of health;

(10) Take such measures as the secretary deems necessary in order to promote the public health. . . and

(11) Establish and maintain laboratory facilities and services as are necessary to carry out the responsibilities of the department."

RCW 70.05.070 – Local health officer – powers and duties (excerpted)

"The local health officer . . . if any, shall:

(1) Enforce the public health statutes of the state, rules of the state board of health and the secretary of health, and all local health rules, regulations and ordinances within his or her jurisdiction including imposition of penalties. . .

(2) Take such action as is necessary to maintain health and sanitation supervision over the territory within his or her jurisdiction;

(3) Control and prevent the spread of any dangerous, contagious or infectious diseases that may occur within his or her jurisdiction;

(4) Inform the public as to the causes, nature, and prevention of disease and disability and the preservation, promotion and improvement of health within his or her jurisdiction;

(5) Prevent, control or abate nuisances which are detrimental to the public health;

(9) Take such measures as he or she deems necessary in order to promote the public health. . ."

RCW 70.05.060 – Powers and duties of local board of health (excerpted)

"Each local board of health shall have supervision over all matters pertaining to the preservation of the life and health of the people within its jurisdiction and shall:

(1) Enforce through the local health officer or the administrative officer . . . if any, the public health statutes of the state and rules promulgated by the state board of health and the secretary of health;

(2) Supervise the maintenance of all health and sanitary measures for the protection of the public health within its jurisdiction;

(3) Enact such local rules and regulations as are necessary in order to preserve, promote and improve the public health and provide for the enforcement thereof;

(4) Provide for the control and prevention of any dangerous, contagious or infectious disease within the jurisdiction of the local health department;

(6) Make such reports to the state board of health through the local health officer or the administrative officer as the state board of health may require. . ."

RCW 49.60.218 – Use of dog guide or service animal (excerpted)

(3)(a) "Service animal" means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Except as provided in subsection (2) of this section, other species of animals, whether wild or domestic, trained or untrained, are not service animals. The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing nonviolent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks.

RCW 71A.10.040 – Protection from discrimination

Persons are protected from discrimination because of a developmental disability as well as other mental or physical handicaps by the law against discrimination, chapter 49.60 RCW, by other state and federal statutes, rules, and regulations, and by local ordinances, when the persons qualify as handicapped under those statutes, rules, regulations, and ordinances.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 87 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services                Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

**Washington Administrative Code (WAC) Chapters and Sections**

WAC 246-100-021 – Responsibilities and duties – Health care providers (excerpted)

Every health care provider, as defined in chapter 246-100 WAC, shall:

> (1) Provide adequate, understandable instruction in control measures designed to prevent the spread of disease to:
>> (a) Each patient with a communicable disease under his or her care; and
>> (b) Others as appropriate to prevent spread of disease.
> (2) Cooperate with public health authorities during investigation of:
>> (a) Circumstances of a case or suspected case of a notifiable condition or other communicable disease; and
>> (b) An outbreak or suspected outbreak of illness.

WAC 246-100-036 – Responsibilities and duties – Local health officers (excerpted)

> (1) The local health officer shall establish, in consultation with local health care providers, health facilities, emergency management personnel, law enforcement agencies, and any other entity he or she deems necessary, plans, policies, and procedures for instituting emergency measures necessary to prevent the spread of communicable disease or contamination.
> (3) Local health officers shall, when necessary, conduct investigations and institute disease control and contamination control measures, including medical examination, testing, counseling, treatment, vaccination, decontamination of persons or animals, isolation, quarantine, vector control, condemnation of food supplies, and inspection and closure of facilities, consistent with those indicated in the *Control of Communicable Diseases Manual*, 20th edition, published by the American Public Health Association, or other measures he or she deems necessary based on his or her professional judgment, current standards of practice and the best available medical and scientific information.
> (4) A local health department should seek agreements as necessary with tribal governments, with federal authorities or with state agencies or institutions of higher education that empower the local health officer to conduct investigations and institute control measures in accordance with WAC 246-100-040 on tribal lands, federal enclaves and military bases, and the campuses of state institutions. State institutions include, but are not limited to, state-operated colleges and universities, schools, hospitals, prisons, group homes, juvenile detention centers, institutions for juvenile delinquents, and residential habilitation centers.

WAC 246-100-070- – Enforcement of local health officer orders (excerpted)

> (1) An order issued by a local health officer in accordance with this chapter shall constitute the duly authorized application of lawful rules adopted by the state board of health and must be enforced by all police officers, sheriffs, constables,

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 88 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

and all other officers and employees of any political subdivisions within the jurisdiction of the health department in accordance with RCW 43.20.050.

(2) Any person who shall violate any of the provisions of this chapter or any lawful rule adopted by the board shall be deemed guilty of a misdemeanor punishable as provided under RCW 43.20.050.

(3) Any person who shall fail or refuse to obey any lawful order issued by any local health officer shall be deemed guilty of a misdemeanor punishable as provided under RCW 70.05.120.


WAC 246-101-101- – Notifiable conditions and the healthcare provider (excerpted)

This section describes the conditions that Washington's health care providers must notify public health authorities of on a statewide basis. The board finds that the conditions in Table HC-1 (see https://apps.leg.wa.gov) of this section are notifiable for the prevention and control of communicable and noninfectious diseases and conditions in Washington.

(1) Principal health care providers shall notify public health authorities of the conditions identified in Table HC-1 of this section as individual case reports following the requirements in WAC 246-101-105, 246-101-110, 246-101-115, and 246-101-120.

(2) Other health care providers in attendance, other than the principal health care provider, shall notify public health authorities of the conditions identified in Table HC-1 of this section unless the condition notification has already been made.

(3) Local health officers may require additional conditions to be notifiable within the local health officer's jurisdiction


WAC 246-101-105- – Duties of the healthcare provider (excerpted)

Health care providers shall:

(1) Notify the local health department where the patient resides, or, in the event that patient residence cannot be determined, the local health department in which the health care providers practice, regarding:

(a) Cases or suspected cases of notifiable conditions specified as notifiable to local health departments in Table HC-1 of WAC 246-101-101;

(b) Cases of conditions designated as notifiable by the local health officer within that health officer's jurisdiction;

(c) Outbreaks or suspected outbreaks of disease including, but not limited to, suspected or confirmed outbreaks of varicella, influenza, viral meningitis,

> health care-associated infection suspected due to contaminated food
> products or devices, or environmentally related disease;

> (d) Known barriers which might impede or prevent compliance with orders for
> infection control or quarantine; and

> (e) Name, address, and other pertinent information for any case, suspected
> case or carrier refusing to comply with prescribed infection control
> measures.

(2) Notify the department of conditions designated as notifiable to the local health
department when:

> (a) A local health department is closed or representatives of the local health
> department are unavailable at the time a case or suspected case of an
> immediately notifiable condition occurs;

> (b) A local health department is closed or representatives of the local health
> department are unavailable at the time an outbreak or suspected
> outbreak of communicable disease occurs.

 (4) Notify the department regarding cases of notifiable conditions specified as
notifiable to the department in Table HC-1 of WAC 246-101-101.

(5) Assure that positive preliminary test results and positive final test results for
notifiable conditions of specimens referred to laboratories outside of Washington
for testing are correctly notified to the local health department of the patient's
residence or the department as specified in Table Lab-1 of WAC 246-101-201.
This requirement can be satisfied by:

> (a) Arranging for the referral laboratory to notify either the local health
> department, the department, or both; or

> (b) Forwarding the notification of the test result from the referral laboratory to
> the local health department, the department, or both.

(6) Cooperate with public health authorities during investigation of:

> (a) Circumstances of a case or suspected case of a notifiable condition or
> other communicable disease; and

> (b) An outbreak or suspected outbreak of disease.

(7) Provide adequate and understandable instruction in disease control measures to
each patient who has been diagnosed with a case of a communicable disease,
and to contacts who may have been exposed to the disease.

(8) Maintain responsibility for deciding date of discharge for hospitalized tuberculosis
patients.

(9) Notify the local health officer of intended discharge of tuberculosis patients in
order to assure appropriate outpatient arrangements are arranged.

(10) By July 1, 2011, when ordering a laboratory test for a notifiable condition as identified in Table HC-1 of WAC 246-101-101, providers must provide the laboratory with the following information for each test order:

    (a) Patient name;

    (b) Patient address including zip code;

    (c) Patient date of birth;

    (d) Patient sex;

    (e) Name of the principal health care provider;

    (f) Telephone number of the principal health care provider;

    (g) Type of test requested;

    (h) Type of specimen;

    (i) Date of ordering specimen collection.

## WAC 246-101-505- – Duties of the local health officer or the local health department (excerpted)

(1) Local health officers or the local health department shall:

    (a) Review and determine appropriate action for:

        (i) Each reported case or suspected case of a notifiable condition;

        (ii) Any disease or condition considered a threat to public health; and

        (iii) Each reported outbreak or suspected outbreak of disease, requesting assistance from the department in carrying out investigations when necessary.

    (b) Establish a system at the local health department for maintaining confidentiality of written records and written and telephoned notifiable conditions case reports;

    (c) Notify health care providers, laboratories, and health care facilities within the jurisdiction of the health department of requirements in this chapter;

    (d) Notify the department of cases of any condition notifiable to the local health department (except animal bites) upon completion of the case investigation;

    (e) Distribute appropriate notification forms to persons responsible for reporting;

    (f) Notify the principal health care provider, if possible, prior to initiating a case investigation by the local health department;

    (g) Carry out the HIV partner notification requirements of WAC 246-100-072;

    (h) Allow laboratories to contact the health care provider ordering the diagnostic test before initiating patient contact if requested and the delay is unlikely to jeopardize public health;

(i) Conduct investigations and institute control measures in accordance with chapter 246-100 WAC.

(2) The local health department may adopt alternate arrangements for meeting the reporting requirements under this chapter through cooperative agreement between the local health department and any health care provider, laboratory or health care facility;

(3) Each local health officer has the authority to:

(a) Carry out additional steps determined to be necessary to verify a diagnosis reported by a health care provider;

(b) Require any person suspected of having a notifiable condition to submit to examinations required to determine the presence of the condition;

(c) Investigate any case or suspected case of a reportable disease or condition or other illness, communicable or otherwise, if deemed necessary;

(d) Require the notification of additional conditions of public health importance occurring within the jurisdiction of the local health officer.

<u>WAC 246-101-605- – Duties of the local health officer or the local health department (excerpted)</u>

(1) The department shall:

(a) Provide consultation and technical assistance to local health departments and the department of labor and industries investigating notifiable conditions reports upon request.

(b) Provide consultation and technical assistance to health care providers, laboratories, health care facilities, and others required to make notifications to public health authorities of notifiable conditions upon request.

(c) Develop, maintain, and make available for local health departments guidance on investigation and control measures for notifiable communicable disease conditions.

(d) Develop and make available forms for the submission of notifiable conditions data to local health departments, health care providers, laboratories, health care facilities, and others required to make notifications to public health authorities of notifiable conditions.

(e) Maintain a twenty-four hour telephone number for reporting notifiable conditions.

(f) Develop routine data dissemination mechanisms that describe and analyze notifiable conditions case investigations and data. These may include annual and monthly reports and other mechanisms for data dissemination as developed by the department.

(g) Conduct investigations and institute control measures as necessary.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 92 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

(2) The department may:

    (a) Negotiate alternate arrangements for meeting reporting requirements under this chapter through cooperative agreement between the department and any health care provider, laboratory, or health care facility.

    (b) Consolidate reporting for notifiable conditions from any health care provider, laboratory, or health care facility, and relieve that health care provider, laboratory, or health care facility from reporting directly to each local health department, if the department can provide the report to the local health department within the same time as the local health department would have otherwise received it.

**Relevant Federal Laws and Regulations**

<u>H.R. 307 – Pandemic and All-Hazards Preparedness Reauthorization Act of 2013 (PAHPRA) (excerpted)</u>

*(Refer to 42 USC Chapter 6A (excerpted below) for amended language of the Public Health Service Act)*

Sec. 202 - (a) COOPERATIVE AGREEMENTS.—Section 319C–1 of the Public Health Service Act (42 U.S.C. 247d–3a) is amended—

(1) in subsection (b)(1)(C), by striking ''consortium of entities described in subparagraph (A)'' and inserting ''consortium of States''; (2) in subsection (b)(2)— (A) in subparagraph (A)— (i) by striking clauses (i) and (ii) and inserting the following:

    ''(i) a description of the activities such entity will carry out under the agreement to meet the goals identified under section 2802, including with respect to chemical, biological, radiological, or nuclear threats, whether naturally occurring, unintentional, or deliberate;

    ''(ii) a description of the activities such entity will carry out with respect to pandemic influenza, as a component of the activities carried out under clause (i), and consistent with the requirements of paragraphs (2) and (5) of subsection (g);''; (ii) in clause (iv), by striking ''and'' at the end; and

    (iii) by adding at the end the following:

    ''(vi) a description of how, as appropriate, the entity may partner with relevant public and private stakeholders in public health emergency preparedness and response;

    ''(vii) a description of how the entity, as applicable and appropriate, will coordinate with State emergency preparedness and response plans in public health emergency preparedness, including State educational agencies (as defined in section 9101(41) of the Elementary and Secondary Education Act of 1965) and State child care lead agencies

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 93 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

(designated under section 658D of the Child Care and Development Block Grant Act of 1990);

''(viii) in the case of entities that operate on the United States-Mexico border or the United States-Canada border, a description of the activities such entity will carry out under the agreement that are specific to the border area including disease detection, identification, investigation, and preparedness and H. R. 307—14 response activities related to emerging diseases and infectious disease outbreaks whether naturally occurring or due to bioterrorism, consistent with the requirements of this section; and

''(ix) a description of any activities that such entity will use to analyze real-time clinical specimens for pathogens of public health or bioterrorism significance, including any utilization of poison control centers;''; and

(B) in subparagraph (C), by inserting '', including addressing the needs of at-risk individuals,'' after ''capabilities of such entity'';

(7) AVAILABILITY OF COOPERATIVE AGREEMENT FUNDS.—

''(A) IN GENERAL.—Amounts provided to an eligible entity under a cooperative agreement under subsection (a) for a fiscal year and remaining unobligated at the end of such year shall remain available to such entity for the next fiscal year for the purposes for which such funds were provided.

''(B) FUNDS CONTINGENT ON ACHIEVING BENCHMARKS.— The continued availability of funds under subparagraph (A) with respect to an entity shall be contingent upon such entity achieving the benchmarks and submitting the pandemic influenza plan as described in subsection (g)

42 U.S.C. § 247d–3a - Improving State and local public health security (excerpted)

(a) In general: To enhance the security of the United States with respect to public health emergencies, the Secretary shall award cooperative agreements to eligible entities to enable such entities to conduct the activities described in subsection (d).

(2) prepare and submit to the Secretary an application at such time, and in such manner, and containing such information as the Secretary may require, including—

(A) an All-Hazards Public Health Emergency Preparedness and Response Plan which shall include—

(i) a description of the activities such entity will carry out under the agreement to meet the goals identified under section 300hh–1 of this title, including with respect to chemical, biological, radiological, or nuclear threats, whether naturally occurring, unintentional, or deliberate;

(ii) a description of the activities such entity will carry out with respect to pandemic influenza, as a component of the activities carried out under clause (i), and consistent with the requirements of paragraphs (2) and (5) of subsection (g);

(iii) preparedness and response strategies and capabilities that take into account the medical and public health needs of at-risk individuals in the event of a public health emergency;

(v) a description of how the entity will include the State Unit on Aging in public health emergency preparedness;

(vi) a description of how, as appropriate, the entity may partner with relevant public and private stakeholders in public health emergency preparedness and response;

(vii) a description of how the entity, as applicable and appropriate, will coordinate with State emergency preparedness and response plans in public health emergency preparedness, including State educational agencies (as defined in section 7801(41) of title 20) and State child care lead agencies (designated under section 9858b of this title);

(viii) in the case of entities that operate on the United States-Mexico border or the United States-Canada border, a description of the activities such entity will carry out under the agreement that are specific to the border area including disease detection, identification, investigation, and preparedness and response activities related to emerging diseases and infectious disease outbreaks whether naturally occurring or due to bioterrorism, consistent with the requirements of this section; and

(ix) a description of any activities that such entity will use to analyze real-time clinical specimens for pathogens of public health or bioterrorism significance, including any utilization of poison control centers;

(E) an assurance that the entity will conduct activities to inform and educate the hospitals within the jurisdiction of such entity on the role of such hospitals in the plan required under subparagraph (A);

(G) a description of the means by which to obtain public comment and input on the plan described in subparagraph (A) and on the implementation of such plan, that shall include an advisory committee or other similar mechanism for obtaining comment from the public and from other State, local, and tribal stakeholders; and

(H) as relevant, a description of the process used by the entity to consult with local departments of public health to reach consensus, approval, or concurrence on the relative distribution of amounts received under this section.

Case 3:20-cv-05423-BHS   Document 34   Filed 06/15/20   Page 95 of 96

Emergency Support Function 8 – Public Health, Medical, and Mortuary Services          Washington State CEMP
Appendix 4 –Communicable Disease and Pandemic Response Concept of Operations

(e)Coordination with local response capabilities

An entity shall, to the extent practicable, ensure that activities carried out under an award under subsection (a) are coordinated with activities of relevant Metropolitan Medical Response Systems, local public health departments, the Cities Readiness Initiative, and local emergency plans.

(2)Criteria for pandemic influenza plans

(A)In general: Not later than 180 days after December 19, 2006, the Secretary shall develop and disseminate to the chief executive officer of each State criteria for an effective State plan for responding to pandemic influenza. The Secretary shall periodically update, as necessary and appropriate, such pandemic influenza plan criteria and shall require the integration of such criteria into the benchmarks and standards described in paragraph (1).

(B)Rule of construction: Nothing in this section shall be construed to require the duplication of Federal efforts with respect to the development of criteria or standards, without regard to whether such efforts were carried out prior to or after December 19, 2006.


42 U.S.C. § 264 - Regulations to control communicable diseases


(a) Promulgation and enforcement by Surgeon General: The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.


(d)Apprehension and examination of persons reasonably believed to be infected

(1) Regulations prescribed under this section may provide for the apprehension and examination of any individual reasonably believed to be infected with a communicable disease in a qualifying stage and (A) to be moving or about to move from a State to another State; or (B) to be a probable source of infection to individuals who, while infected with such disease in a qualifying stage, will be moving from a State to another State. Such regulations may provide that if upon examination any such individual is found to be infected, he may be detained for such time and in such manner as may be reasonably necessary. For purposes of

this subsection, the term "State" includes, in addition to the several States, only the District of Columbia.

(2) For purposes of this subsection, the term "qualifying stage", with respect to a communicable disease, means that such disease—

　　(A) is in a communicable stage; or

　　(B) is in a precommunicable stage, if the disease would be likely to cause a public health emergency if transmitted to other individuals.

28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services (excerpted)

§ 35.160 General.

(a)

(1) A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others.

(2) For purposes of this section, "companion" means a family member, friend, or associate of an individual seeking access to a service, program, or activity of a public entity, who, along with such individual, is an appropriate person with whom the public entity should communicate.

(b)

(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.

(2) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.